1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| JUAN HERNANDEZ, et al., | Case No.16-CV-03957-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| CITY OF SAN JOSE, et al., | Re: Dkt. No. 6 |
| Defendants. | |

Plaintiffs Juan Hernandez, Nathan Velasquez, Frank Velasquez, Rachel Casey, Mark Doering, Mary Doering, Barbara Arigoni, Dustin Haines-Scrodin, Andrew Zambetti, Christina Wong, Craig Parsons, the minor I.P., Greg Hyver, and Todd Broome (collectively, "Plaintiffs") bring this putative class action against Defendants the City of San Jose ("City"); Sam Liccardo, the Mayor of San Jose, in his individual capacity ("Liccardo"); Edgardo Garcia, the Police Chief of San Jose ("Garcia") (collectively, "named City Defendants"); Does 1–15; Anthony Yi; the minor H.A.; the minor S.M.; and Does 16–38. ECF No. 1 (Compl.). Before the Court is the named City Defendants' motion to dismiss. ECF No. 6. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART with leave to amend and DENIES IN PART the named City Defendants' motion to dismiss.

United States District Court
Northern District of California

## I.     BACKGROUND

### A.  Factual Background

The complaint alleges the following facts.

Plaintiffs are individuals who attended a rally for presidential candidate Donald J. Trump ("Trump") on June 2, 2016 at the McEnery Convention Center ("Convention Center") in San Jose, California. Compl. ¶¶ 38–39. At the end of the rally, as Plaintiffs were leaving the building, San Jose police and other police officers directed Plaintiffs from the east-northeast exit of the Convention Center. *Id.* ¶ 45. A police line outside the exit "directed the Trump supporters to turn north and to proceed along Market Street, into [a] crowd of violent anti-Trump protesters." *Id.* ¶ 46. "The police also actively prevented the Trump Rally attendees from proceeding south along Market Street, away from the anti-Trump protesters, or from leaving the convention center through alternative exits." *Id.* ¶ 47. When Plaintiffs reached the anti-Trump protesters, the protesters attacked. *Id.* ¶ 48. Among other alleged acts of violence, protesters threw a bottle, eggs, and a tomato at Plaintiff Rachel Casey, *id.* ¶ 82, hit Plaintiff Andrew Zambetti with a bag of rocks, *id.* ¶ 97–100, and threatened and intimidated Plaintiffs Greg Hyver and Todd Broome, *id.* ¶¶ 138–39, 145. During these attacks, Plaintiffs allege that police officers directed Plaintiffs into dangerous areas and deliberately did not intervene when violence erupted. *Id.* ¶¶ 50–58, 64, 100, 114–15. In one case, a police officer told a group of Plaintiffs who had been attacked "I'm so sorry," but also said that "the police could not do anything." *Id.* ¶ 120. These statements by police officers allegedly prompted the protesters to "commit additional illegal acts against other Trump supporters." *Id.* ¶ 121.

According to the complaint, Liccardo and Garcia ordered police officers to direct Plaintiffs into a dangerous area and not to intervene when violence broke out. As evidence of this, Plaintiffs point out that Liccardo is "a registered Democrat and an outspoken critic of Trump." *Id.* ¶ 41. After the rally, Plaintiffs allege that Liccardo stated that "San Jose police officers performed admirably and professionally to contain acts of violence and protect individuals' rights to assemble, protest, and express their political views." *Id.* ¶ 56. Liccardo also stated that "[w]hile

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

it's a sad statement about our political discourse that Mr. Trump has focused on stirring antagonism instead of offering real solutions to our nation's challenges, there is absolutely no place for violence against people who are simply exercising their rights to participate in the political process." *Id.* ¶ 55.

Similarly, Garcia stated before the June 2, 2016 rally, "we will do everything possible to protect the First Amendment, those attending our Community, and our Officers." *Id.* ¶ 43. Plaintiffs claim Garcia failed to live up to this promise when Garcia "directed" police officers to lead Plaintiffs into the crowd of protesters and not to intervene when violence broke out. *Id.* ¶¶ 45, 50–52.

Plaintiffs further claim that both Liccardo and Garcia acted with "discriminatory animus" against Plaintiffs and therefore violated Plaintiffs' "constitutional and statutory rights to free speech, peaceful assembly, and due process." *Id.* ¶ 57–58.

Plaintiffs also claim that the City itself is vicariously liable for the actions of its police officers, who were at least negligent in placing Plaintiffs in a dangerous situation and then failing to intervene. *Id.* ¶¶ 180–85.

Finally, Plaintiffs make other allegations against Does 1–15, Anthony Yi, the minor H.A., the minor S.M., and Does 16–38. *Id.* ¶¶ 186–336. However, the claims against these Defendants are not before the Court because none of these Defendants have joined the instant motion.

### B. Procedural History

The instant action began with a complaint filed on July 14, 2016. ECF No. 1. In the complaint, Plaintiffs assert twenty-eight claims for relief. Compl. ¶¶ 153–336. Only the first four claims are relevant to the instant motion because these are the only claims against the named City Defendants. These claims are as follows: (1) a claim under 42 U.S.C. § 1983 against Liccardo, Garcia, and the City for violation of Plaintiffs' rights under the First and Fourteenth Amendments (Count 1); (2) a claim for violation of the Bane Act, CAL. CIV. CODE § 52.1, against Liccardo, Garcia, and the City (Count 2); (3) a claim for violation of the Ralph Act, CAL. CIV. CODE § 51.7, against Liccardo, Garcia, and the City (Count 3); and (4) a California common law negligence

3

United States District Court
Northern District of California

1    claim against the City as employer of Does 1–15 (Count 4). Compl. ¶ 153–85.

2           Plaintiffs seek to represent a class consisting of "[a]ll persons who attended the June 2,

3    2016 Trump Rally at the McEnery Convention Center in San Jose, California, and exited the rally

4    from the east-northeast exit." *Id.* ¶ 146. Plaintiffs estimate that the class may include 7,000 to

5    10,000 people. *Id.* ¶ 147.

6           The named City Defendants filed the instant motion to dismiss on August 4, 2016. ECF

7    No. 6. Along with their motion, the named City Defendants filed a request for judicial notice. ECF

8    No. 6-1. Plaintiffs filed their opposition to the motion on September 8, 2016, ECF No. 10, and the

9    named City Defendants filed their reply on September 15, 2016, ECF No. 11.

10   **II.     LEGAL STANDARD**

11       **A. Rule 12(b)(6) Motion to Dismiss**

12          Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

13   short and plain statement of the claim showing that the pleader is entitled to relief." A complaint

14   that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a

15   plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

16   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

17   pleads factual content that allows the court to draw the reasonable inference that the defendant is

18   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

19   standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

20   defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on

21   a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

22   construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

23   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not

24   accept as true allegations contradicted by judicially noticeable facts, see *Shwarz v. United States*,

25   234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of

26   public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment,

27   *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of

28

4

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

1    legal conclusions merely because they are cast in the form of factual allegations." *Fayer v.*

2    *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law

3    and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355

4    F.3d 1179, 1183 (9th Cir. 2004).

5    **B. Leave to Amend**

6        If the Court concludes that the complaint should be dismissed, it must then decide whether

7    to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

8    "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

9    15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*

10    *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original). Nonetheless, a

11    district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory

12    motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

13    allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and]

14    futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

15    **III.   DISCUSSION**

16        As stated above, Plaintiffs' complaint asserts twenty-eight claims for relief. Only the first

17    four claims are relevant to the instant motion because these are the only claims against the named

18    City Defendants. These claims are as follows: (1) a claim under 42 U.S.C. § 1983 against

19    Liccardo, Garcia, and the City for violation of Plaintiffs' rights under the First and Fourteenth

20    Amendments (Count 1); (2) a claim for violation of the Bane Act, CAL. CIV. CODE § 52.1, against

21    Liccardo, Garcia, and the City (Count 2); (3) a claim for violation of the Ralph Act, CAL. CIV.

22    CODE § 51.7, against Liccardo, Garcia, and the City (Count 3); and (4) a California common law

23    negligence claim against the City as employer of Does 1–15 (Count 4). Compl. ¶ 153–85.

24        The named City Defendants move to dismiss each of Plaintiffs' four claims against them

25    on different grounds. As to Plaintiffs' § 1983 claim, the named City Defendants argue that (1)

26    Plaintiffs have failed to state a claim; (2) the City is not subject to suit under § 1983; and (3)

27    Liccardo and Garcia have qualified immunity. As to Plaintiffs' Bane Act, Ralph Act, and

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

negligence claims, the named City Defendants argue that Plaintiffs have failed to state a claim. The Court considers these arguments in turn.

### A. Claim Under 42 U.S.C. § 1983

The named City Defendants move to dismiss Plaintiffs' § 1983 claim on three grounds: (1) that Plaintiffs have failed to state a claim; (2) that the City is not subject to suit under § 1983; and (3) that Liccardo and Garcia have qualified immunity. As discussed below, the Court finds that dismissal is appropriate under the first two grounds, and therefore need not consider the third ground.

#### 1. Failure to State a Claim

In order to state a claim under 42 U.S.C. § 1983, Plaintiffs must sufficiently allege that the "(1) the conduct that harm[ed] [Plaintiffs] [was] committed under color of state law (*i.e.*, state action), and (2) the conduct . . . deprive[d] [Plaintiffs] of a constitutional right." *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). When ruling on a motion to dismiss for failure to state a claim, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at, 1031.

Plaintiffs' claim under 42 U.S.C. § 1983 is premised on their allegation that the named City Defendants deprived Plaintiffs of their "constitutional rights to free speech, peaceful assembly, and due process under the First and Fourteenth Amendments." Compl. ¶ 158. The complaint does not describe Plaintiffs' theory of these violations in detail, but it does state that Liccardo and Garcia violated the First and Fourteenth Amendments because they "targeted [Plaintiffs] on the basis of their real or perceived political affiliations." *Id.* ¶ 159. In their opposition to the instant motion, Plaintiffs further argue that the named City Defendants "suppressed Plaintiffs' ability to exercise First Amendment rights" and "retaliated against Plaintiffs for exercising their First Amendment rights" by directing police to lead Plaintiffs to a violent crowd and abandon them there. Opp. at 6–9. Plaintiffs argue that this same behavior resulted in a due process violation because the named City Defendants deliberately created a danger to Plaintiffs and then "stood idly by as Plaintiffs were brutally attacked." *Id.* at 12.

6

The Court assumes, without deciding, that directing police officers to lead Plaintiffs to a violent crowd and abandon them there in retaliation for Plaintiffs' political expression would violate the First Amendment. The Court further assumes, without deciding, that directing police officers to lead Plaintiffs to a violent crowd and abandon them there while "exhibit[ing] deliberate indifference to the known or obvious danger" would violate Plaintiffs' right to due process. Opp. at 16; *see also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006). However, in order to state a claim against Liccardo and Garcia under § 1983, Plaintiffs must plausibly allege that Liccardo and Garcia (1) directed police officers to lead Plaintiffs to the violent crowd and then abandon Plaintiffs there, and (2) did so in retaliation for political expression or with deliberate indifference to a known or obvious danger. The Court considers whether Plaintiffs have met this standard first for Liccardo then for Garcia.

### i. Liccardo

Plaintiffs allege that Liccardo "maliciously and in bad faith" subjected Plaintiffs to a risk of danger and "targeted [Plaintiffs] on the basis of their real or perceived political affiliations." Compl. ¶ 159. Plaintiffs also allege that Liccardo "order[ed] the police not to intervene as [Plaintiffs] were heckled and attacked by anti-Trump protesters." *Id.* ¶ 148. Plaintiffs support these assertions by alleging that Liccardo is "a registered Democrat and an outspoken critic of Trump." Compl. ¶ 41. Plaintiffs also allege that after the rally, Liccardo stated that San Jose police officers "performed admirably to contain acts of violence and protect individuals' rights to assemble, protest, and express their political views" and that "[w]hile it's a sad statement about our political discourse that Mr. Trump has focused on stirring antagonism instead of offering real solutions to our nation's challenges, there is absolutely no place for violence against people who are simply exercising their rights to participate in the political process." *Id.* ¶ 55. Finally, Plaintiffs allege that during the events, several police officers stated that escorting Plaintiffs back to their cars was not part of the police department's plan, *id.* ¶ 52, 143, and that one police officer stated that the police "could not do anything" after one group of Plaintiffs had been attacked, *id.* ¶ 120.

Plaintiffs' assertions against Liccardo are similar to assertions that the United States

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

1    Supreme Court addressed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the plaintiff had

2    been detained by Federal Bureau of Investigation ("FBI") and Immigration and Naturalization

3    Service agents in connection with an investigation into the September 11 attacks. *Id.* at 667–68.

4    The plaintiff alleged that "officials who were at the highest level of the law enforcement

5    hierarchy" had targeted him and others on the basis of their race, religion, or national origin in

6    violation of the First Amendment and the due process clause of the Fifth Amendment. *Id.* at 668–

7    69. Specifically, the plaintiff alleged that Attorney General John Ashcroft ("Ashcroft") was the

8    "architect" of this discriminatory policy and that FBI Director Robert Mueller ("Mueller") was

9    "instrumental in [its] adoption, promulgation, and implementation." *Id.* at 669.

10       The United States Supreme Court found that these allegations were insufficient to survive

11   a motion to dismiss for failure to state a claim. Although a court ruling on a motion to dismiss

12   must "accept factual allegations in the complaint as true and construe the pleadings in the light

13   most favorable to the nonmoving party," *Manzarek*, 519 F.3d at 1031, the United States Supreme

14   Court found that the *Iqbal* plaintiff's "bare assertions" that Ashcroft and Mueller devised a

15   discriminatory policy were "nothing more than a formulaic recitation of the elements of a

16   constitutional discrimination claim" and therefore were not entitled to be assumed true. *Id.* at 681.

17   Ignoring conclusory statements and considering only the complaint's "well-pleaded facts," the

18   United States Supreme Court found that the facts did not "give rise to a plausible inference" that

19   Ashcroft and Mueller initiated such a policy. *Id.* at 682.

20       Plaintiffs in the instant case allege "[o]n information and belief" that Liccardo "acted with

21   discriminatory animus against [Plaintiffs], based upon [Plaintiffs'] real or perceived political

22   affiliations" and "directed the approximately 250 San Jose police officers . . . not to intervene as

23   they witnessed the many violent criminal acts perpetrated by dozens of anti-Trump protesters."

24   Compl. ¶¶ 1, 56. Plaintiffs support this claim of discriminatory animus with two allegations: first,

25   that Liccardo is a Democrat and an "outspoken critic of Trump," *id.* ¶ 41, and second, that

26   Liccardo made the following statement after the rally: "San Jose police officers performed

27   admirably and professionally to contain acts of violence and protect individuals' rights to

28
Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

1   assemble, protest, and express their political views. While it's a sad statement about our political

2   discourse that Mr. Trump has focused on stirring antagonism instead of offering real solutions to

3   our nation's challenges, there is absolutely no place for violence against people who are simply

4   exercising their rights to participate in the political process," *id.* ¶ 55.

5       Similarly, in *Iqbal*, the plaintiff had alleged that Ashcroft and Mueller "knew of, condoned,

6   and willfully and maliciously agreed to subject [the plaintiff]" to harsh confinement "as a matter

7   of policy, solely on account of [the plaintiff's] religion, race, and/or national origin and for no

8   legitimate penological interest." *Iqbal*, 556 U.S. at 680. To support this claim, the plaintiff alleged

9   that Ashcroft and Mueller had "arrested and detained thousands of Arab Muslim men . . . as part

10  of [an] investigation of the events of September 11." *Id.* at 681.

11      The United States Supreme Court noted that if true, the elements the plaintiff alleged in

12  *Iqbal* would state a claim for relief. *Id.* at 678. The Court also noted that the supporting facts were

13  "consistent with [Ashcroft and Mueller] purposefully designating detainees 'of high interest'

14  because of their race, religion, or national origin." *Id.* at 681. Nonetheless, the Court found that the

15  plaintiff's "bare assertions . . . amount[ed] to nothing more than a formulaic recitation of the

16  elements of a constitutional discrimination claim" and therefore were "not entitled to be assumed

17  true." *Id.*

18      Similarly, in the instant case, Plaintiffs' allegations "on information and belief," Compl. ¶

19  56, that Liccardo targeted Plaintiffs based on their political affiliation and directed police to lead

20  Plaintiffs to danger and abandon them there are conclusory and not sufficient to survive a motion

21  to dismiss. This bare assertion offers no "factual enhancement," but merely recites an element of a

22  § 1983 claim. *Iqbal*, 556 U.S. at 678. Although ordinarily the Court "accept[s] factual allegations

23  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

24  party," *Manzarek*, 519 F.3d at 1031, in the instant case Plaintiffs' allegation of Liccardo's

25  retaliatory intent is a "legal conclusion couched as a factual allegation" and is "not entitled to be

26  assumed true." *Iqbal*, 556 U.S. at 678, 681. Additionally, Plaintiffs' supporting facts – that

27  Liccardo was a Democrat and that Liccardo stated disapproval of Trump – are "merely consistent"

28

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

1    with the alleged wrongs and are not "sufficient to plausibly suggest" that Liccardo had a

2    "discriminatory state of mind" or that "the purpose of the [action] was to target" Plaintiffs for their

3    political beliefs. *Id.* at 678, 682–83.

4          As in *Iqbal*, in the instant case Plaintiffs allege a "discrete wrong" that may have been

5    enough to survive a motion to dismiss before *Twombly* and *Iqbal* were decided. *Id.* at 683.

6    However, under *Twombly* and *Iqbal*, these conclusory allegations are not enough to state a claim.

7    *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012) (dismissing a § 1983 complaint

8    against supervisors of a state agency because, among other deficiencies, the complaint's

9    allegations that the supervisors committed the alleged acts personally were implausible).

10         This conclusion is bolstered by the fact that under the San Jose City Charter ("Charter"),

11   the mayor has no authority to direct police officers.[1] San Jose City Charter art. IV, § 401; art. VII,

12   § 701. Of course, as Plaintiffs point out, the fact that the mayor lacks the legal authority to issue an

13   order does not mean that he could not issue such an order anyway "under color of law." Opp. at 9–

14

15   ─────────────────

16   [1] The named City Defendants request that the Court take judicial notice of the Charter under
     Federal Rule of Evidence ("Rule") 201. *See* Mot. at 3 n.2. The contents of the Charter meet the

17   standard of Rule 201(b)(2) because they "can be accurately and readily determined from sources
     whose accuracy cannot reasonably be questioned." However, it is not clear that a provision of the

18   charter is the kind of "adjudicative fact" that is the proper subject of judicial notice. FED. R. EVID.
     201(a). Some courts have found that City Charters are judicially noticeable. *See Rabkin v. Dean*,

19   856 F. Supp. 543, 546 (N.D. Cal. 1994); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.), *cert.
     denied*, 434 U.S. 968 (1977); *Melton v. City of Oklahoma City*, 879 F.2d 706, 724 (10th Cir.

20   1989), *on reh'g*, 928 F.2d 920 (10th Cir. 1991). However, at least one respected treatise has called
     this use of judicial notice "questionable." 21B CHARLES ALAN WRIGHT AND KENNETH W.

21   GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5105.3 (2d ed. 2005). The Court need not decide
     this issue. If the provisions of the City Charter are not judicially noticeable, it is because they are

22   "legislative facts" – rules of law – rather than "adjudicative facts," and in that case the Court can
     consider those provisions as statements of law. *See* FED. R. EVID. 201, Advisory Committee Notes

23   on Proposed Rules ("In determining the content or applicability of a rule of domestic law, the
     judge is unrestricted in his investigation and conclusion."); *Von Saher v. Norton Simon Museum of*

24   *Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (holding that judicial notice is not required for
     statements of law). Either way – either as an adjudicative fact that can be judicially noticed or as a

25   statement of law that can be considered – the Court may consider the provisions of the Charter in
     deciding the instant motion.

26

27

28
                                                    10

1   10. However, viewing the complaint in the light most favorable to Plaintiffs "do[es] not require

2   courts to credit a complaint's conclusory statements without reference to its factual context."

3   *Iqbal*, 556 U.S. at 686. The factual context of the instant case shows that Liccardo lacked legal

4   authority to give any orders to police officers and therefore was less likely to give such an order.

5   Considering this context, Plaintiffs' conclusory accusations, which take no account of Liccardo's

6   lack of legal authority, are not sufficient to state a claim.

7       Therefore, the Court finds that Plaintiffs have failed to state a claim for violation of § 1983

8   against Liccardo and GRANTS the named City Defendants' motion to dismiss the § 1983 claim

9   against Liccardo. However, the Court grants leave to amend because amendment would not

10  necessarily be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave

11  to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

12  other facts" (internal quotation marks omitted)). Plaintiffs may be able to allege new facts that

13  "nudge[]" their claim that Liccardo ordered police officers to target Plaintiffs "across the line from

14  conceivable to plausible." *Twombly*, 550 U.S. at 570.

15          **ii. Garcia**

16      Plaintiffs allege that like Liccardo, Garcia also ordered police officers to target Plaintiffs

17  because of their political views. According to Plaintiffs, Garcia and others created a dangerous

18  situation by directing police officers to require all persons leaving the Trump rally to "walk

19  directly into and through a mob of physically violent and aggressive anti-Trump protesters," and

20  then "directed [police officers] not to intervene as they witnessed the many violent criminal acts

21  perpetrated by dozens of anti-Trump protesters." Compl. ¶¶ 1, 50.

22      As with the claim against Liccardo, Plaintiffs offer little other than a bare allegation to

23  support their claim that Garcia gave such an order or targeted Plaintiffs because of their political

24  affiliation. Unlike Liccardo, Plaintiffs do not allege that Garcia personally opposed Trump or that

25  Garcia had political differences with Trump. The only *specific* action that Plaintiffs allege that

26  Garcia took was his statement before the Trump rally that "we will do everything possible to

27  protect the First Amendment, those attending our Community, and our officers." *Id.* ¶ 43.

28

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    However, unlike Liccardo, Garcia was the City's chief of police and therefore had authority to

2    give orders to police officers. Nonetheless, Plaintiffs have not sufficiently alleged that Garcia gave

3    an order for police officers to direct Plaintiffs into a violent crowd or not to intervene when

4    Plaintiffs were attacked or that Garcia did so because of Plaintiffs' political affiliation.

5         The closest that Plaintiffs come to an allegation that Garcia gave the alleged order are

6    statements from several unidentified police officers that they could not escort Plaintiffs to their

7    cars and one statement from an unidentified police officer stating that there was nothing the police

8    could do when a certain group of Plaintiffs was attacked. Compl. ¶ 52, 120, 143. However, none

9    of these statements is sufficient to give rise to the inference that Garcia ordered police officers to

10   target Plaintiffs. The first statement, by several unidentified police officers, that police officers

11   could not escort Plaintiffs to their vehicles because this was not part of the City's plan, is

12   irrelevant to the central questions of whether Garcia ordered police officers to direct Plaintiffs into

13   a crowd of dangerous protesters and abandon them there and whether Garcia did so because of

14   Plaintiffs' political affiliation. *Id.* ¶ 52. The second statement, that there was nothing the police

15   could do to help certain Plaintiffs, is also insufficient, because it does not sufficiently allege that

16   Garcia ordered police not to intervene to stop violence or that Garcia did so because of Plaintiff's

17   political affiliation. As in *Iqbal*, these factual allegations are "merely consistent" with the "sheer

18   possibility" that Garcia gave the alleged orders with the alleged state of mind. *Id.* at 678. Although

19   ordinarily the Court "accept[s] factual allegations in the complaint as true and construe[s] the

20   pleadings in the light most favorable to the nonmoving party," *Manzarek*, 519 F.3d at, 1031,

21   Plaintiffs' "conclusory statements" about Garcia are not entitled to be assumed true, and therefore

22   are insufficient to state a claim under § 1983. *Iqbal*, 556 U,S, at 678, 681.

23        It is likely true – although Plaintiffs do not specifically make any such allegation – that as

24   police chief, Garcia had a hand in developing the plan for the Trump rally. However, in order to

25   state a claim for relief using their theories of liability under § 1983, Plaintiffs must plausibly allege

26   that in making that plan, Garcia either retaliated against Plaintiffs for their political beliefs or

27   created a danger and was deliberately indifferent to whether Plaintiffs were harmed by that danger.

28

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Compl. ¶ 153–63. Setting aside Plaintiffs' "bald allegations," they have alleged only that Garcia

2    was police chief at the relevant time and that before the Trump rally, he promised to protect

3    Plaintiffs' First Amendment rights. As in *Iqbal*, the problem with Plaintiffs' allegations is their

4    "conclusory nature." 556 U.S. at 681.

5        Plaintiffs have not sufficiently stated a claim under § 1983 against Garcia, and therefore

6    the Court GRANTS the named Defendants' motion to dismiss the § 1983 claim against Garcia.

7    Nevertheless, the Court grants leave to amend because amendment would not necessarily be futile.

8    *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless

9    it determines that the pleading could not possibly be cured by the allegation of other facts"

10   (internal quotation marks omitted)).

11       **2. *Monell* Liability**

12       Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691

13   (1987), a municipality is not liable under § 1983 unless "official municipal policy of some nature

14   caused a constitutional tort." More specifically, "it is when execution of a government's policy or

15   custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

16   represent official policy, inflicts the injury that the government as an entity is responsible under §

17   1983." *Id.* at 694. To establish an official policy that would give rise to *Monell* liability, a plaintiff

18   may show (1) that "the individual who committed the constitutional tort was an official with final

19   policy-making authority," (2) that the City failed to train its employees in circumstances such that

20   "the government's omission . . . amount[s] to 'deliberate indifference' to a constitutional right," or

21   (3) that a policymaking official "ratified a subordinate's unconstitutional decision or action and

22   the basis for it." *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled

23   on other grounds by Castro v. Cty. of Los Angeles*, 2016 WL 4268955 (9th Cir. Aug. 15, 2016).

24       The named City Defendants move to dismiss the § 1983 claim against the City on the

25   ground that the police officers' actions were not City policy, and therefore the City is not subject

26   to suit. Mot. at 17. In their opposition to the instant motion, Plaintiffs argue that the police

27   officers' actions constituted the City's official policy causing a constitutional tort for three

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   reasons: (1) Garcia acted as a final policymaker for the City by directing police officers to lead

2   Plaintiffs to danger and not to intervene to prevent violence; (2) the City failed to adequately train

3   or supervise its police officers; and (3) the City ratified the police officers' actions. Opp. at 13–16.

4   The Court considers each of these arguments in turn.

5                          **i. Garcia as Policymaker for the City**

6          Plaintiffs argue that the City can be held liable because Garcia, in his capacity as police

7   chief, chose to adopt a policy under which police officers would lead Plaintiffs into a dangerous

8   crowd and then not intervene to stop the resulting violence. It is true that for the purpose of § 1983

9   claims, official policies include "fixed plans of action to be followed under similar circumstances

10  consistently and over time" as well as "course[s] of action tailored to a particular situation and not

11  intended to control decisions in later situations." *Pembaur v. City of Cincinnati*, 475 U.S. 469,

12  480–81 (1986). Thus, if Garcia made the alleged decision, the Court would have to consider

13  whether this decision was sufficient to set policy for the City. However, the Court need not decide

14  this question because, as discussed above, Plaintiffs have not sufficiently alleged that Garcia made

15  any such decision in this case. Therefore, the Court finds that Plaintiffs have not sufficiently

16  alleged that Garcia adopted an unconstitutional policy in his capacity as police chief.

17                   **ii. Failure to Train and Supervise Police Officers**

18         In their opposition to the instant motion, Plaintiffs argue that the City may also be liable

19  for the actions of police officers because the City "failed to train its officers" either to "avoid

20  directing people toward a dangerous, violent mob" or to "intervene and protect people from the

21  dangerous situation they themselves created by requiring Plaintiffs to exit the rally toward the

22  violent mob." Opp. at 15.

23         In order to establish that a municipality is liable under § 1983 for failure to train, Plaintiffs

24  must show that a particular training deficiency was so egregious that it "amount[ed] to deliberate

25  indifference to the rights of persons with whom the police come into contact." *City of Canton v.*

26  *Harris*, 489 U.S. 378, 388 (1989). To make such a showing, Plaintiffs must show a pattern of

27  similar constitutional violations or otherwise demonstrate that training was obviously necessary to

28
                                              14

1  avoid constitutional violations. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of

2  similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

3  deliberate indifference for purposes of failure to train."); *City of Canton*, 489 U.S. at 390 ("[I]t

4  may happen that . . . the need for more or different training is so obvious, and the inadequacy so

5  likely to result in the violation of constitutional rights, that the policymakers of the city can

6  reasonably be said to have been deliberately indifferent to the need.").

7          Plaintiffs do not claim that violations of the kind alleged have ever taken place before.

8  Instead, Plaintiffs argue that there is an obvious need to train police officers "to avoid directing

9  people toward a dangerous mob" and "to intervene and protect people from the dangerous

10 situation they themselves created by requiring Plaintiffs to exit the rally towards the violent mob."

11 Opp. at 15. Plaintiffs cite *Flores v. Morgan Hill Unified School District*, 324 F.3d 1130, 1136 (9th

12 Cir. 2003), to support their argument that there was an obvious need for training in the instant

13 case. In *Morgan Hill*, the Ninth Circuit found that a reasonable jury could conclude that there was

14 a need to train teachers, students, and campus monitors to prevent harassment based on sexual

15 orientation. *Id.* However, in doing so, the Ninth Circuit specifically noted that the defendants were

16 "aware[] of hostility toward homosexual students at the schools" and that plaintiffs had previously

17 requested such training. *Id.*

18          Similarly, in *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003) (en banc), in a case

19 addressing an allegedly unconstitutional assignment scheme for lawyers in death penalty cases, the

20 Ninth Circuit noted that the complaint "allege[d] not merely an isolated assignment of an

21 inexperienced lawyer, but a deliberate pattern and policy of refusing to train lawyers for capital

22 cases known to the county administrators to exert unusual demands on attorneys." In both cases,

23 the plaintiffs alleged a pattern of unconstitutional conduct that put the defendants on notice about

24 the need for training.

25          Plaintiffs do not claim that violence of this kind has ever happened in San Jose before or

26 allege any other facts showing a pattern of similar conduct that the City needed to address. Instead,

27 the instant case is more similar to the Ninth Circuit's decision in *Flores v. County of Los Angeles*,

28

*United States District Court*
*Northern District of California*

15

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

758 F.3d 1154, 1160 (9th Cir. 2014), in which the plaintiffs argued that the county had unconstitutionally failed to train sheriff's deputies "not to sexually harass or sexually attack women with whom they come into contact." The Ninth Circuit dismissed this claim as "not plausible on its face," because "[w]here the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference." *Id.* The same is true in the instant case. Specific training "hardly seems necessary" for police officers to know that they should not direct people into violent crowds and abandon them there. *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998)). Plaintiffs have made no allegations indicating that the City knew or should have known before the Trump rally that police officers would direct people into violent crowds and abandon them there unless they were trained otherwise, and therefore Plaintiffs have not shown that the need for training of this kind was so clear that the City exhibited "deliberate indifference" by failing to provide it. *City of Canton*, 489 U.S. at 388.

Thus, because Plaintiffs have failed to plausibly allege a pattern of constitutional violations or otherwise show that there was a "patently obvious" need for training, *id.*, the Court finds that Plaintiffs have not sufficiently alleged that the City is liable under a failure to train theory.

### iii. Ratification of the Actions of City Employees

Plaintiffs argue that the City is liable under § 1983 because it effectively established an unconstitutional policy when Liccardo, the mayor of San Jose, stated after the alleged events that "San Jose police officers performed admirably and professionally to contain acts of violence and protect individuals' rights to assemble, protest, and express their political views." Opp. at 16, Compl. ¶ 55. According to Plaintiffs, this "ratified the actions" of city employees and therefore raised those actions to the level of municipal policy. Plaintiffs do not claim that Garcia took any action to ratify the behavior of police officers.

To support their argument, Plaintiffs cite *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991). In *Larez*, the Ninth Circuit found that the plaintiff's complaint adequately alleged that the Los Angeles police chief had ratified the conduct of police officers who broke the plaintiff's

16

United States District Court
Northern District of California

1    nose during a search, based on the police chief's comments after the events. *Id.* at 641. These

2    comments included the statement that the plaintiff was "probably lucky that [the broken nose is]

3    all he had broken" and the statement, "I tell my officers to do something—and we do something."

4    *Id.* In the instant case, the only statement that Plaintiffs rely on is Liccardo's general statement that

5    police had performed admirably to "contain acts of violence and protect individuals' rights to

6    assemble, protest, and express their political views." Unlike in *Larez*, Liccardo's statements did

7    not condone unconstitutional behavior, but on the contrary expressed admiration to police officers

8    for protecting constitutional rights.

9         However, perhaps the most important difference between *Larez* and the instant case is that

10   in *Larez*, the Ninth Circuit's holding was dependent on the fact that the evidence showed that the

11   police chief was "an authorized policymaker on police matters." *Id.* at 646. Importantly, as

12   mentioned above, Plaintiffs base their ratification argument entirely on the statements of Liccardo

13   and do not allege that Garcia made statements ratifying police officers' conduct. Opp. at 16. Thus,

14   the Court need only determine whether Liccardo was "an authorized policymaker on police

15   matters." *Larez*, 946 F.2d at 646.

16        In determining whether an official has the power to ratify conduct and thereby raise it to

17   the level of municipal policy, the Court considers whether Liccardo is "responsible under state law

18   for making policy in *that area* of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S.

19   112, 123 (1988). As discussed above, the San Jose City Charter shows that Liccardo has no

20   authority to direct police officers. San Jose City Charter art. IV, § 401; art. VII, § 701. Therefore,

21   Liccardo's vague statements praising police officers cannot have transformed those actions into

22   municipal policy because Liccardo had no power to set policy on police matters. *Id.*; *see also*

23   *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995), *as amended* (Apr. 24, 1995)

24   (holding that whether the alleged ratifier is an "official policymaker" is a relevant factor). Because

25   Liccardo lacked official power to ratify the actions of police officers and raise them to the level of

26   City policy, the Court finds that Plaintiffs have not sufficiently alleged that the City is liable under

27   § 1983 under a theory of ratification.

28
Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

None of Plaintiffs' three arguments for the City's liability under § 1983 is meritorious, and there is no other basis on which to deem the police officers' actions in the instant case as the official policy of the City. The Court therefore GRANTS the named City Defendants' motion to dismiss Plaintiffs' § 1983 claim against the City. The Court nevertheless grants leave to amend because amendment in this instance may not be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### B. Bane Act Claim

Plaintiffs assert a claim under the Bane Act, CAL. CIV. CODE § 52.1, against each of the named City Defendants: Liccardo, Garcia, and the City. The Court addresses the claim against Liccardo and Garcia then the claim against the City.

The Bane Act punishes any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." CAL. CIV. CODE § 52.1(a). The Bane Act also provides a cause of action for anyone whose rights are harmed in this way. CAL. CIV. CODE § 52.1(b). In order to state a claim under the Bane Act, Plaintiffs must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

Plaintiffs base their claim against Liccardo and Garcia under the Bane Act on their allegations that Liccardo and Garcia "instructed police officers to require [Plaintiffs] to exit the convention center in the direction of the violent mob, prevented [Plaintiffs] from using alternative, safer routes, and failed to assist [Plaintiffs] after directing them to the dangerous situation." Compl. ¶ 166. However, as discussed above, Plaintiffs' allegations that Liccardo and Garcia gave such instructions are insufficient and therefore cannot survive a motion to dismiss. For the same

United States District Court
Northern District of California

reason, these allegations cannot form the basis of a claim under the Bane Act. The Court therefore GRANTS the named City Defendants' motion to dismiss the Bane Act claim against Liccardo and Garcia. Nevertheless, the Court grants leave to amend on this issue because amendment may not be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

Next, the Court addresses the Plaintiffs' Bane Act claim against the City. Plaintiffs' complaint bases the City's liability on the alleged orders that Liccardo and Garcia gave to police officers. Compl. ¶ 166 ("The City Defendants instructed police officers to require [Plaintiffs] to exit the convention center in the direction of the violent mob, prevented [Plaintiffs] from using alternative, safer routes, and failed to assist [Plaintiffs] after directing them to the dangerous situation."). However, as described above, Plaintiffs have not plausibly alleged that Liccardo and Garcia gave any such orders, and therefore Plaintiffs have not plausibly alleged that the City is vicariously liable for those orders. The Court therefore GRANTS the named City Defendants' motion to dismiss the Bane Act claim against the City. Nevertheless, the Court grants leave to amend on this issue because amendment may not be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### C. Ralph Act Claim

Plaintiffs assert a claim under the Ralph Act, CAL. CIV. CODE § 51.7, against each of the named City Defendants: Liccardo, Garcia, and the City. The Court addresses the claim against Liccardo and Garcia then the claim against the City.

The Ralph Act guarantees, among other things, that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation." CAL. CIV. CODE § 51.7. In order to state a claim under the Ralph Act, Plaintiffs must allege that "(1) Defendants committed or threatened violent acts against Plaintiffs; (2) Defendants were motivated by their

1   perception of Plaintiffs' political affiliation; (3) Plaintiffs were harmed; and (4) Defendants'

2   conduct was a substantial factor in causing Plaintiffs harm." *Campbell v. Feld Entm't, Inc.*, 75 F.

3   Supp. 3d 1193, 1205 (N.D. Cal. 2014); *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th

4   860, 881 (2007) (outlining the elements of a Ralph Act claim).

5        Similar to their Bane Act claim, Plaintiffs base their Ralph Act claim against Liccardo and

6   Garcia on their allegations that Liccardo and Garcia, who "were motivated by prejudice against

7   [Plaintiffs], based on [Plaintiffs'] real or perceived political affiliations," ordered police officers to

8   direct Plaintiffs toward a violent crowd and then not intervene when violence erupted. Compl. ¶

9   175. However, as discussed above, Plaintiffs' allegations that Liccardo and Garcia gave such

10   instructions are insufficient and therefore cannot survive a motion to dismiss. For the same reason,

11   those allegations cannot form the basis of a claim under the Ralph Act. The Court therefore

12   GRANTS the named City Defendants' motion to dismiss the Ralph Act claim against Liccardo

13   and Garcia. Nevertheless, the Court grants leave to amend on this issue because amendment may

14   not be futile. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to

15   amend . . . unless it determines that the pleading could not possibly be cured by the allegation of

16   other facts" (internal quotation marks omitted)).

17        The Court next considers Plaintiffs' Ralph Act claim against the City. As with the Bane

18   Act claim, Plaintiffs base the City's liability on the alleged orders of Liccardo and Garcia, who

19   allegedly targeted Plaintiffs "based on [their] real or perceived political affiliations." *Id.* ¶ 175.

20   However, as with the Bane Act, Plaintiffs have not plausibly alleged that Liccardo and Garcia

21   gave any such orders and therefore have not plausibly alleged that the City is liable.

22        Plaintiffs' claim against the City under the Ralph Act fails for another reason as well. The

23   type of conduct that can underlie a Ralph Act claim is narrower than the conduct that can underlie

24   a Bane Act claim. Specifically, to establish a Ralph Act claim, Plaintiffs must allege that the City,

25   or those whose acts can be attributed to the City, "committed or threatened violent acts against

26   Plaintiffs." *Campbell*, 75 F. Supp. 3d at 1205; *see also Ramirez v. Wong*, 188 Cal. App. 4th 1480,

27   1486 (2010) ("There can be no 'threat of violence' without some expression of intent to injure or

28    

                        20

1    damage plaintiffs or their property.")

2         Plaintiffs allege that police officers "knowingly directed [Plaintiffs] toward the violent

3    mob of protesters" and then failed to intervene. Compl. ¶ 173. However, Plaintiffs never allege

4    that any of these police officers threatened Plaintiffs or touched them in any way. *See Ramirez*,

5    188 Cal. App. 4th at 1486 (finding that the fact that plaintiffs could "reasonably fear" violence

6    based on the defendants conduct was not enough when the defendant "did not express any

7    intention, either by words or conduct, . . . to inflict injury on plaintiffs or their property.").  On the

8    contrary, Plaintiffs allege that police officers failed to help them or otherwise intervene. Under the

9    Ralph Act, "violence . . . clearly involves some physical, destructive act." *Campbell*, 75 F. Supp.

10   3d at 1205 (quoting *OSJ PEP Tenn. LLC v. Harris*, 2014 WL 4988070, at *5 (C.D.Cal. Oct. 7,

11   2014)). Indeed, "[v]iolence . . . demands more than mere[] application of physical force." *Id.*

12   (internal quotation marks omitted). Even if police officers used stern warnings to prompt Plaintiffs

13   to walk in a particular direction, this alone would not suffice to establish violence or a threat of

14   violence under the Ralph Act. *See Corales v. Bennett*, 567 F.3d 554, 559, 563, 571 (9th Cir. 2009)

15   (holding that a "harsh lecture about the possible consequences of truancy" that resulted in a

16   student committing suicide did not constitute a threat of violence under the Ralph Act). Plaintiffs

17   have not met the first element of a Ralph Act claim, and therefore the Court GRANTS the named

18   City Defendants' motion to dismiss the Ralph Act claim against the City. Nevertheless, the Court

19   grants leave to amend because amendment may not be futile. *See Lopez*, 203 F.3d at 1127 (holding

20   that "a district court should grant leave to amend . . . unless it determines that the pleading could

21   not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

22   **D. Negligence Claim**

23        Finally, Plaintiffs assert a negligence claim against Does 1–15 and against the City as

24   employer of Does 1–15. Plaintiffs allege that Does 1–15 are police officers who directed Plaintiffs

25   out of the Convention Center and into the crowd of anti-Trump protesters and then failed to

26   intervene when violence erupted. Compl. ¶¶ 154, 181. The City moves to dismiss the negligence

27   claim asserted against the City. In order to establish a claim for negligence, Plaintiffs must show

28

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   (1) duty, (2) breach, (3) causation, and (4) damages. *Strong v. State*, 201 Cal. App. 4th 1439, 1449

2   (Cal. Ct. App. 2011). The Court considers each of these elements in turn.

3   **1. Duty**

4   Plaintiffs assert that Does 1–15 "had a duty of care to avoid causing unnecessary physical

5   harm and distress." Compl. ¶ 181. The City argues that it had no such duty because "[i]t is a basic

6   principle of common-law torts that a person generally owes no affirmative duty to protect another

7   from harm." Mot. at 18. However, as Plaintiffs point out, a person can acquire such a duty by

8   placing another person in danger. *See, e.g.*, *Ingham v. Luxor Cab Co.*, 93 Cal. App. 4th 1045,

9   (2001) (holding that a taxicab that improperly dropped a passenger in a place other than her

10  destination acquired a duty because "circumstances creat[ed] a foreseeable danger"); Opp. at 20.

11  Additionally, every person owes a duty not to place others in unreasonably dangerous situations in

12  the first place. *See, e.g.*, *Lolli v. Mkt. St. Ry. Co.*, 43 Cal. App. 2d 166, 168 (1941) ("[E]very

13  person must exercise reasonable care."). Plaintiffs contend that Does 1–15 owed Plaintiffs a

14  general duty not to place them in harm's way, and that after they placed Plaintiffs in harm's way,

15  Does 1–15 acquired a duty to provide affirmative aid. California law supports Plaintiffs'

16  contention. *See People v. Oliver*, 210 Cal. App. 3d 138, 147 (1989) ("In California civil cases,

17  courts have found a special relationship giving rise to an affirmative duty to act where some act or

18  omission on the part of the defendant either created or increased the risk of injury to the plaintiff,

19  or created a dependency relationship inducing reliance or preventing assistance from others.");

20  *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001) (finding that a police officer

21  owed a duty of care to passengers in a car pulled over for speeding, where the officer directed the

22  driver to stop in the center median of a freeway and the stopped car was then struck by another

23  vehicle); *McCorkle v. Los Angeles,* 70 Cal.2d 252, 260–62 (1969) (finding a duty of care when an

24  officer investigating an accident directed the plaintiff to follow him into the middle of the

25  intersection where the plaintiff was hit by a car). Thus, if Does 1–15 did place Plaintiffs in danger,

26  then Does 1–15 would acquire a duty to use reasonable means to prevent that danger from

27  harming Plaintiffs. The Court therefore finds that Plaintiffs have sufficiently alleged that Does 1–

28

22

United States District Court
Northern District of California

15 owed a legally cognizable duty of care.

### 2. Breach

Plaintiffs claim that Does 1–15 breached their duty of care by deliberately leading Plaintiffs toward a violent crowd that was likely to harm Plaintiffs. After the violence began, Plaintiffs allege that Does 1–15 further violated their duty by failing to intervene to rescue Plaintiffs from the harm to which Does 1–15 had subjected Plaintiffs. Viewing the complaint "in the light most favorable to Plaintiff[s]" as the Court must on a motion to dismiss, *Liberal v. Estrada*, 632 F.3d 1064, 1071 (9th Cir. 2011), the Court cannot say that the actions of Does 1–15 were reasonable as a matter of law. Plaintiffs allege that police officers directed everyone exiting the Trump rally directly into a violent anti-Trump crowd even though there were several other safe exits available. Compl. ¶¶ 45–46.

Plaintiffs assert that by directing Plaintiffs into an area with anti-Trump protesters, Does 1–15 breached their duty to not unreasonably subject Plaintiffs to danger. The allegations that Does 1–15 directed Plaintiffs out of an exit that led to a group of Plaintiffs are not conclusory, and in fact the City seems to concede that "police officers[] le[d] Plaintiffs to a particular exit." Reply at 14. Assuming that Plaintiffs' allegations are true, police officers' conduct may have created an unreasonable risk of harm that was exacerbated when police officers failed to intervene to stop the violence. The Court therefore finds that Plaintiffs have sufficiently alleged a breach of duty.

### 3. Causation

In California, Plaintiffs can recover on a negligence claim only if the alleged breach of duty was a "substantial factor" in causing Plaintiffs' harm. *S. Coast Framing, Inc. v. WCAB*, 61 Cal. 4th 291, 298 (2015). In their complaint, Plaintiffs allege that the behavior of Does 1–15 was a substantial factor in causing Plaintiffs' harm. Plaintiffs allege that if Does 1–15 had not directed Plaintiffs toward the violent crowd, Plaintiffs would have been able to avoid the violence by leaving the Convention Center in other, safer directions. Compl. ¶¶ 1, 47, 59. Plaintiffs also allege that by breaching their duty to intervene to stop the violence, Does 1–15 caused further harm. *Id.* ¶¶ 114, 119, 122.

23

1    The City argues that Does 1–15 cannot be considered the cause of Plaintiffs' harm because

2    of the state-created danger doctrine, which provides that in constitutional tort actions, Plaintiffs

3    can recover from police officers for injuries only if police officers "affirmatively and with

4    deliberate indifference place[] [Plaintiffs] in danger [Plaintiffs] would not otherwise have faced."

5    *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1066 (9th Cir. 2006). The City argues that this

6    means that Plaintiffs cannot recover because Plaintiffs would have been worse off if there had

7    been no police protection at the Trump rally at all. Mot. at 18, 11–12; Reply at 13. The City has

8    cited no case, and the Court has found none, that holds that the state-created danger doctrine

9    applies in negligence cases. *See Lockrem v. United States*, 2011 WL 3501693, at *5 (W.D. Wash.

10   Aug. 10, 2011) (noting that the state-created danger doctrine "arise[s] in the context of claims

11   under 42 U.S.C. § 1983, and therefore may have little or no bearing on the existence of a duty

12   under [state] law concerning negligence"); *compare Johnson v. City of Seattle*, 474 F.3d 634, 639

13   (9th Cir. 2007) (addressing state-created danger doctrine for a § 1983 claim); *Johnson v. City of*

14   *Seattle*, 2007 WL 173761, at *1 (9th Cir. Jan. 18, 2007) (separately addressing a negligence claim

15   in the same case, with no discussion of the state-created danger doctrine).

16   However, even if the state-created danger doctrine does apply to a negligence claim,

17   Plaintiffs have adequately alleged that they would have been better off with no police presence at

18   all. Plaintiffs claim that Does 1–15 directed them into a violent crowd and then did effectively

19   nothing. Compl. ¶ 114, 119, 122. "[A]ccept[ing] factual allegations in the complaint as true and

20   constru[ing] the pleadings in the light most favorable to the nonmoving party" as the Court must

21   on a motion to dismiss, *Manzarek*, 519 F.3d at 1031, Plaintiffs allege that if there had been no

22   police presence at all, Plaintiffs could have left the Convention Center in any direction they chose.

23   It may be implausible to suggest that Does 1–15 and other police officers did nothing at all to

24   deter violent acts, and indeed, Plaintiffs allege that police officers allowed at least one Plaintiff,

25   the minor I.P., to cross a police skirmish line "to safety," which suggests that police officers

26   provided some level of protection. *Id.* ¶ 94. However, Plaintiffs claim that directing Plaintiffs into

27   the violent crowd outweighed the modest level of protection that police officers provided. If those

United States District Court
Northern District of California

allegations are true, as the Court must assume on a motion to dismiss, then Plaintiffs would have been better off with no police presence at all. Thus, Plaintiffs have adequately alleged that the actions of Does 1–15 were a substantial factor in causing Plaintiffs' harm, even if the state-created danger doctrine applies. The Court therefore finds that Plaintiffs have sufficiently alleged causation.

### 4. Damages

Plaintiffs allege that they are entitled to "compensatory damages" for their physical injuries and "emotional and mental distress" in an amount "according to proof at trial." Compl. ¶¶ 180–85. The City does not dispute that Plaintiffs suffered damages. The Court therefore finds that Plaintiffs have sufficiently alleged damages.

### 5. Vicarious Liability

Unlike in § 1983 actions, under California law municipalities enjoy no special immunity for negligence actions. Instead, the City is liable for the negligence of Does 1–15 to the same extent that Does 1–15 would be liable individually. CAL. GOV. CODE § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). Plaintiffs have alleged that the City is vicariously liable for the actions of Does 1–15 under this section, Compl. ¶ 183, and the City does not dispute this theory of vicarious liability. *See also id.* ¶ 34 (alleging that Does 1–15 acted within the scope of their employment). Because Plaintiffs have sufficiently stated a claim for negligence against Does 1–15, Plaintiffs have also sufficiently stated a claim for negligence against the City.

The Court therefore DENIES the motion to dismiss Plaintiffs' negligence claim against the City.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss Plaintiffs' negligence claim against the City.

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

The Court GRANTS with leave to amend the motion to dismiss the following claims against all of the named City Defendants:

- Claim for violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983
- Claim under the Bane Act, California Civil Code § 52.1
- Claim under the Ralph Act, California Civil Code § 51.7

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within thirty (30) days of the date of this order. Failure to meet the thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Plaintiffs' claims that are dismissed with leave to amend in the instant order. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: October 13, 2016

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No.16-CV-03957-LHK
ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
*Northern District of California*