UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| JUAN HERNANDEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No.16-CV-03957-LHK<br><br>**ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 44 |

Plaintiffs Juan Hernandez, Nathan Velasquez, Frank Velasquez, Rachel Casey, Mark Doering, Mary Doering, Barbara Arigoni, Dustin Haines-Scrodin, Andrew Zambetti, Christina Wong, Craig Parsons, the minor I.P., Greg Hyver, Todd Broome, Donovan Rost, Michele Wilson, Cole Cassady, Theodore Jones, Martin Mercado, and Christopher Holland (collectively, "Plaintiffs") bring this putative class action against Defendants the City of San Jose ("City"); San Jose Police Chief Edgardo Garcia ("Garcia"); Police Officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta (collectively, "City Defendants"); Anthony Yi; the minor H.A.; the minor S.M.; Victor Gasca; Daniel Arciga; Rafael Medina; Anthony McBride; and Does 1–55. First Amended Complaint ("FAC"), ECF No. 35. Before the Court is the City Defendants' second motion to dismiss. ECF No. 44. Having

1

United States District Court
Northern District of California

considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART with prejudice and DENIES IN PART the City Defendants' motion to dismiss.

# I.    BACKGROUND

## A. Factual Background

The FAC alleges the following facts.

Plaintiffs are individuals who attended a rally for then presidential candidate Donald J. Trump ("Trump") on June 2, 2016 at the McEnery Convention Center ("Convention Center") in San Jose, California. FAC ¶¶ 62–63. At the end of the rally, as Plaintiffs were leaving the building, San Jose police and other police officers directed Plaintiffs from the east-northeast exit of the Convention Center. *Id.* ¶ 89. A police line outside the exit "directed the Trump supporters to turn north and to proceed along Market Street, into [a] crowd of violent anti-Trump protesters." *Id.* ¶ 90. "The police also actively prevented the Trump Rally attendees from proceeding south along Market Street, away from the anti-Trump protesters, or from leaving the convention center through alternative exits." *Id.* ¶ 91. When Plaintiffs reached the anti-Trump protesters, the protesters attacked. *Id.* ¶ 92.

Plaintiffs Hernandez and Haines-Scrodin allege that Defendant Gasca repeatedly struck them in the face. *Id.* ¶¶ 119–126. Plaintiff Nathan Velasquez was allegedly assaulted by Anthony Yi. *Id.* ¶¶ 127–39. Defendants McBride, Gasca, and Arciga also allegedly confined Plaintiff Casey against the entrance of the Marriot hotel while protesters threw a bottle, eggs, and a tomato at Plaintiff Casey. *Id.* ¶ 140–59. The minor I.P. was allegedly assaulted by the minor H.A. and was then allegedly denied assistance by the San Jose Fire Department. *Id.* ¶¶ 160–71.  An unknown individual hit Plaintiff Andrew Zambetti with a bag of rocks. *Id.* ¶ 172–75. Plaintiffs Mark Doering, Mary Doering, Wilson, and Arigoni were assaulted. *Id.* ¶¶ 176–201. During the assaults, Plaintiff Wilson allegedly asked for help from a police officer who said that the police had been ordered not to intervene but only to disperse the crowd in order to avoid inciting a riot. *Id.* ¶¶ 198–99. Other unknown individuals threatened and intimidated Plaintiffs Greg Hyver and Todd

United States District Court
Northern District of California

Broome and assaulted and/or battered Plaintiffs Wong, Mercado, Holland, Jones, Rost, and Cassady. *Id.* ¶¶ 202–272. During these attacks, Plaintiffs allege that police officers deliberately directed Plaintiffs into dangerous areas and did not intervene when violence erupted. *Id.* ¶¶ 198–99.

According to the complaint, Garcia, Kinsworthy, and other unspecified actors devised the crowd-control plan for the Trump Rally and were deliberately indifferent to whether the plan caused harm to Plaintiffs. *Id.* ¶¶ 75, 87. As evidence of Garcia's alleged deliberate indifference, Plaintiffs claim that Garcia knew that "some violence ha[d] been reported" at other Trump Rallies in California, *id.* ¶ 75, and that Garcia requested additional officers through mutual aid channels to deal with the known risk of violence, *id.* ¶¶ 67–69, 83. Additionally, Plaintiffs allege that before the rally, Chief Garcia edited a proposed "Media Advisory" that originally announced a "zero tolerance approach to violent protesters" to instead announce only that police officers "will do everything possible to ensure the event is safe for all a[t]tendees and surrounding neighborhoods." *Id.* ¶ 77. Plaintiffs also allege that Garcia stated that even before the Trump Rally, Garcia knew that "we did not have the staffing to have the arrest teams and personnel to keep the parties separated." *Id.* ¶ 82.

Plaintiffs also claim that the police officers on duty on the night of the Trump Rally acted with "deliberate indifference, reckless and/or conscious disregard of a known and obvious danger, by directing Plaintiffs into the mob, preventing Plaintiffs from leaving the event through other, safer paths, and by failing to intervene in the many attacks perpetrated on Plaintiffs and the Class members, which would not have occurred but for the Individual City Defendants' actions." *Id.* ¶ 287. Specifically, Plaintiffs allege that violence had been reported as early as 6:00 p.m. on the night of the Trump Rally, and yet police officers continued to direct Plaintiffs out of the same single exit of the convention center even after realizing that doing so placed Plaintiffs in serious danger. *Id.* ¶ 1. Plaintiffs also claim that the City itself is vicariously liable for the actions of its police officers on the night of the Trump Rally. *Id.* ¶¶ 292–96, 303–10. Plaintiffs claim that the City is liable in part because after the rally Chief Garcia allegedly praised officers for their

1   "discipline and restraint" because "additional force can incite more violence in the crowd." *Id.* ¶

2   102.

3         Finally, Plaintiffs make other allegations against Anthony Yi, the minor H.A., the minor

4   S.M., Victor Gasca, Daniel Arciga, Rafael Medina, Anthony McBride, and Does 42–55. *Id.* ¶¶

5   311–556. However, the claims against these Defendants are not before the Court because none of

6   these Defendants have joined the instant motion.

7   **B. Procedural History**

8         The instant action began with a complaint filed on July 14, 2016. ECF No. 1. In the

9   complaint, fourteen Plaintiffs asserted twenty-eight claims for relief against six named defendants.

10   Compl. ¶¶ 153–336. The original complaint named the City of San Jose, Mayor Sam Liccardo

11   ("Liccardo"), and Garcia as City Defendants. *Id.* The remaining police officers were not yet

12   named in the original complaint, but instead were listed as Doe Defendants. *Id.* Plaintiffs'

13   complaint also sought to represent a class consisting of "[a]ll persons who attended the June 2,

14   2016 Trump Rally at the McEnery Convention Center in San Jose, California, and exited the rally

15   from the east-northeast exit." *Id.* ¶ 146.

16         The City Defendants filed a motion to dismiss the original complaint on August 4, 2016.

17   ECF No. 6. The motion sought to dismiss all four claims against the City Defendants, which were

18   as follows: (1) a claim under 42 U.S.C. § 1983 against Liccardo, Garcia, and the City for violation

19   of Plaintiffs' rights under the First and Fourteenth Amendments (Count 1); (2) a claim for

20   violation of the Bane Act, CAL. CIV. CODE § 52.1, against Liccardo, Garcia, and the City (Count

21   2); (3) a claim for violation of the Ralph Act, CAL. CIV. CODE § 51.7, against Liccardo, Garcia,

22   and the City (Count 3); and (4) a California common law negligence claim against the City as

23   employer of Does 1–15 (Count 4). Compl. ¶ 153–85.

24         On October 13, 2016, the Court granted in part and denied in part the motion to dismiss.

25   ECF No. 30. The Court dismissed Plaintiffs' § 1983 claims because the Court found that Plaintiffs

26   had not sufficiently alleged that Liccardo and Garcia had acted with malicious intent or targeted

27   Plaintiffs because of their political affiliations. *Id.* at 7–13.The Court also found that Plaintiffs had

28

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

not alleged a municipal policy sufficient to render the City of San Jose vicariously liable for the actions of Liccardo, Garcia, or the police officers. *Id.* at 13–18. The Court further found that Plaintiffs' Bane Act and Ralph Act claims were based on essentially the same allegations as Plaintiffs' § 1983 claim, and therefore the Court dismissed the Bane Act and Ralph Acts claims. *Id.* at 18–21. However, the Court found that Plaintiffs had sufficiently alleged a negligence claim against the Doe police officers and the City. *Id.* at 21–25.

After the Court granted the motion to dismiss in part, Plaintiffs filed an Amended Complaint ("FAC"). ECF No. 35. The FAC added numerous Plaintiffs, Defendants, and causes of action. The FAC contains 43 claims by 20 individual plaintiffs against 17 named defendants and 55 Doe defendants. ECF No. 35. As relevant to the instant motion, the FAC omitted Liccardo as a Defendant but added police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta (collectively, "named police officers") as defendants. *Id.* The FAC also asserted claims against Does 1–15, who are other unidentified police officers present at the rally. Therefore, under the FAC the City Defendants are the City of San Jose, Police Chief Edgardo Garcia, and Police Officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta, as well as Does 1–15.

The FAC asserts four claims against the City Defendants: (1) a claim under 42 U.S.C. § 1983 against Garcia, the named Police Officers, and Does 1–15 for violation of Plaintiffs' rights under the Fourteenth Amendment (Count 1); (2) a claim against the City under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987) for violation of Plaintiffs' rights under the Fourteenth Amendment the City (Count 2); a claim for violation of the Bane Act, CAL. CIV. CODE § 52.1, against Garcia, the City, the named Police Officers, and Does 1–15 (Count 3); and (4) a California common law negligence claim against the City (Count 4). FAC ¶¶ 280–310.

In the FAC, Plaintiffs also seek to represent the following class: "All persons who attended the June 2, 2016 Trump Rally at the McEnery Convention Center in San Jose, California, and who exited the rally from the east-northeast exit, were denied the ability to leave through alternative

5

1    exits by the City Defendants, or agents under the City Defendants' control, and/or were directed

2    toward the anti-Trump protest by the City Defendants, or agents under the City Defendants'

3    control, and/or were refused assistance by the City Defendants, or agents under the City

4    Defendants' control after being directed towards the dangerous protest." ECF No. 273.

5          The City Defendants filed the instant motion to dismiss on December 22, 2016. ECF No.

6    44. Plaintiffs filed an opposition on January 19, 2017. ECF No. 60. The City Defendants filed a

7    reply on January 26, 2017. ECF No. 61.

8    **II.    LEGAL STANDARD**

9       **A.  Rule 12(b)(6) Motion to Dismiss**

10         Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

11   short and plain statement of the claim showing that the pleader is entitled to relief." A complaint

12   that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a

13   plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

14   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

15   pleads factual content that allows the court to draw the reasonable inference that the defendant is

16   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

17   standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

18   defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on

19   a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

20   construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

21   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not

22   accept as true allegations contradicted by judicially noticeable facts, see *Shwarz v. United States*,

23   234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of

24   public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment,

25   *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of

26   legal conclusions merely because they are cast in the form of factual allegations." *Fayer v.*

27   *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law

28
Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## B. Leave to Amend

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15. . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (ellipsis in original). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   DISCUSSION

As stated above, Plaintiffs' complaint asserts 43 claims for relief. Only the first four claims are relevant to the instant motion because these are the only claims against the City Defendants. These claims are as follows: (1) a claim under 42 U.S.C. § 1983 against Garcia, the named Police Officers, and Does 1–15 for violation of Plaintiffs' rights under the Fourteenth Amendment (Count 1); (2) a claim against the City under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987), for violation of Plaintiffs' rights under the Fourteenth Amendment (Count 2);  (3) a claim for violation of the Bane Act, CAL. CIV. CODE § 52.1, against Garcia, the City, the named Police Officers, and Does 1–15 (Count 3); and (4) a California common law negligence claim against the City (Count 4). FAC ¶¶ 280–310. Plaintiffs' claim against the City under § 1983 is derivative of Plaintiffs' claim against Garcia, the named Police Officers, and Does 1–15 under § 1983 because Plaintiffs assert that the City is vicariously liable under *Monell* for the actions of Garcia, the named Police Officers, and Does 1–15.

The named City Defendants move to dismiss each of Plaintiffs' four claims against them on different grounds. As to Plaintiffs' § 1983 claim against Garcia, the named Police Officers, and

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

Does 1–15, the City Defendants argue that (1) Plaintiffs have failed to state a claim; and (2) the individual Defendants have qualified immunity. As to Plaintiffs' § 1983 claim against the City, the City Defendants argue that the City is not subject to suit under § 1983 and *Monell*. As to Plaintiffs' Bane Act claim, the City Defendants argue that Plaintiffs have failed to state a claim. As to Plaintiffs' negligence claims, the City Defendants argue that the City is immune under California Government Code § 820.2. The Court considers these arguments in turn.

**A. Claim Under 42 U.S.C. § 1983 Against Garcia, the Named Police Officers, and Does 1–15**

The City Defendants move to dismiss Plaintiffs' § 1983 claim against Garcia, the named Police Officers, and Does 1–15 on two grounds: (1) Plaintiffs have failed to state a claim for violation of the Fourteenth Amendment; and (2) the individual City Defendants have qualified immunity. The Court considers these arguments in turn.

**1. Failure to State a Claim**

In order to state a claim under 42 U.S.C. § 1983, Plaintiffs must allege that "(1) the conduct that harm[ed] [Plaintiffs] [was] committed under color of state law (*i.e.*, state action), and (2) the conduct . . . deprive[d] [Plaintiffs] of a constitutional right." *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). When ruling on a motion to dismiss for failure to state a claim, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at, 1031.

Ordinarily, "members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties." *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). However, Plaintiffs' claim under 42 U.S.C. § 1983 seeks to take advantage of an exception to this general rule called the "state-created danger" doctrine. To state a claim under the state-created danger doctrine, a plaintiff must first allege that "the state action affirmatively place[d] the plaintiff in a position of danger, that is, . . . state action create[d] or expose[d] an individual to a danger which he or she would not have otherwise faced." *Id.* More particularly, in order to state claim against police for failing to provide protection, a plaintiff must allege facts

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1  showing that the police put the plaintiff in a "worse position than that in which he would have

2  been had [the police] not acted at all." *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489

3  U.S. 189, 202(1989); *see also Johnson*, 474 F.3d at 641 (holding that a police department's

4  adoption of a crowd-control plan did not give rise to liability because the plaintiffs would have

5  been in a worse position if police had adopted no plan at all).

6  Additionally, in order to state a claim under the state-created danger doctrine, a plaintiff

7  must allege "deliberate indifference" by the state actor to the "known or obvious danger" created

8  by the state action. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). Deliberate

9  indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a

10  known or obvious consequence of his action." *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

11  The Ninth Circuit defined the contours of deliberate indifference in *L.W. v. Grubbs,* 92 F.3d 894

12  (9th Cir. 1996). Under *Grubbs*, the standard applied in determining "deliberate indifference is

13  even higher than gross negligence—deliberate indifference requires a culpable mental state."

14  *Patel*, 648 F.3d at 974 (citing *Grubbs*, 92 F.3d at 898–900). The state actor must "recognize[ ] [an]

15  unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the

16  consequences to the plaintiff." *Grubbs*, 92 F.3d at 899 (internal quotation marks omitted). In other

17  words, a defendant is deliberately indifferent if the defendant "knows that something is going to

18  happen but ignores the risk and exposes [the plaintiff] to it." *Id.* at 900.

19  Using this standard, the Court first considers whether Plaintiffs have stated a § 1983 claim

20  against Garcia and then considers whether Plaintiffs have stated a § 1983 claim against the named

21  police officers and Does 1–15 ("police officers").

22  ### i. Garcia

23  In Plaintiffs' original complaint, Plaintiffs asserted that Garcia was not only deliberately

24  indifferent to the danger to a risk of harm to Plaintiffs, but also that Garcia intended to subject

25  Plaintiffs to harm based on Plaintiffs' political affiliation in violation of the First Amendment.

26  Compl. ¶¶ 57–58. In dismissing Plaintiffs' original complaint, the Court found that Plaintiffs'

27  factual allegations were "'merely consistent' with the 'sheer possibility' that Garcia gave the

28
Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

alleged orders with the alleged state of mind" of intent or deliberate indifference. ECF No. 30, at 12. The Court noted that Garcia was likely involved in developing the crowd-control plan for the Trump Rally, but the Court held that "in order to state a claim for relief under their theories of liability under § 1983, Plaintiffs must plausibly allege that in making that plan, Garcia . . . created a danger and was deliberately indifferent to whether Plaintiffs were harmed by that danger." *Id.*

However, in the original complaint, the only specific fact that Plaintiffs alleged about Garcia was that before the Trump Rally, Garcia stated that "we will do everything possible to protect the First Amendment, those attending our Community, and our officers." Compl. ¶ 43. The Court found that this allegation did not demonstrate intent or deliberate indifference, and therefore the Court found that Plaintiffs had offered no non-conclusory allegations suggesting that Garcia was deliberately indifferent to a danger that Garcia created. *Id.*

In the FAC, Plaintiffs no longer assert that Garcia intentionally targeted Plaintiffs because of their political affiliation. Instead, the FAC asserts only that Garcia was deliberately indifferent to a risk of harm to Plaintiffs in devising the crowd-control plan. FAC ¶¶ 280–91. Plaintiffs have added new allegations regarding Garcia to support this claim, but none of these allegations suggests that Garcia demonstrated deliberate indifference to a known or obvious danger that Garcia created. These new allegations are as follows.

First, Plaintiffs claim that Garcia sent an email in which he warned that "[r]ecent Trump rallies in other communities in California have drawn large crowds, and some violence has been reported." FAC ¶ 75.

Second, Plaintiffs allege that Sergeant Enrique Garcia of the San Jose Police Department's Media Relations Unit emailed Garcia a proposed "Media Advisory" which stated, "[W]e are taking a zero tolerance approach to violent protesters. We will utilize all resources within the Department and through mutual aid to ensure a safe event for everyone." *Id.* ¶ 76. Garcia allegedly changed the Media Advisory to instead state, "[W]e will do everything possible to ensure the event is safe for all a[t]tendees and surrounding neighborhoods." *Id.* ¶ 77.

Third, Plaintiffs allege that after the Trump Rally, Garcia made statements indicating that

10

United States District Court
Northern District of California

he had known beforehand of the risk of danger posed by anti-Trump protesters. According to a San Jose Police Officer's Association (POA) online publication, Garcia stated that "[i]t wasn't until Monday that we were notified of the location, it all happened very quickly. We immediately turned to special Ops to coordinate and recognized we did not have the staffing to have the arrest teams and personnel to keep the parties separated. [Garcia] said that they recognized they could've done things better and is committed to work with the POA to improve things in the future." *Id.* ¶ 82.

Finally, Plaintiffs allege that after the Trump Rally, Garcia stated that "[o]ur officers should be commended for both their effectiveness and their restraint" because "additional force can incite more violence in the crowd." *Id.* ¶ 102.

These allegations do not remedy the deficiencies that the Court identified in the original complaint. In deciding a motion to dismiss, the Court "construe[s] the pleadings in the light most favorable to" Plaintiffs. *Manzarek*, 519 F.3d at 1031. However, even construing these new allegations in the light most favorable to Plaintiffs, these allegations do not demonstrate that Garcia was deliberately indifferent to a danger that Garcia created.  Specifically, these allegations do not show that Garcia "recognize[d] the unreasonable risk and actually intend[ed] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Grubbs*, 92 F.3d at 899.

Plaintiffs argue that their allegations are sufficient to demonstrate deliberate indifference to a heightened risk because Garcia knew that "previous [Trump] rallies in the state had been met by violence." Opp. at 9. Plaintiffs argue extensively that although Garcia knew of a risk of harm from third parties, Garcia failed to adopt a crowd-control plan that would deal with the risk effectively. For example, Plaintiffs allege that Garcia requested additional officers through mutual aid channels, FAC ¶¶ 67–69, 83, and that Garcia knew and warned the City Council that "some violence has been reported" at other Trump rallies, FAC ¶ 75. Nevertheless, despite knowing of the risk, Plaintiffs allege that Garcia instructed police officers to adopt a passive strategy to avoid further antagonizing the crowd and not to intervene when police officers saw attacks. *Id.* ¶ 80. In doing so, Plaintiffs allege that Garcia departed from the City's previous "zero tolerance" approach

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    to violent protesters. *Id.* ¶¶ 76–78.

2         However, whether Garcia adopted a plan that adequately protected Plaintiffs is not the

3    relevant inquiry. In general, state actors are under no obligation to protect the public from harm by

4    third parties. *DeShaney*, 489 U.S. at 197. More specifically, the Ninth Circuit has held that a state

5    actor cannot be held liable simply for adopting a passive crowd-control strategy instead of "a more

6    aggressive operation plan," even in the face of a known risk of violence. *Johnson*, 474 F.3d at 640.

7         Instead, under the state-created danger doctrine, state actors are liable only when they

8    "affirmatively place[] the plaintiff in a position of danger" and are deliberately indifferent to the

9    danger they create. *Kennedy*, 439 F.3d at 1061. Therefore, Garcia can be liable only if he was

10   deliberately indifferent to the fact that the crowd-control plan he helped to devise *created* a

11   danger. *See Johnson*, 474 F.3d at 640 (rejecting a claim against police officers for failing to

12   intervene in a riot because the "police officers did not create the dangerous conditions"). Indeed,

13   under Ninth Circuit law Garcia can be liable only if he was deliberately indifferent to the fact that

14   the crowd-control plan created a danger so serious that it would have been better "had the police

15   not come up with any operational plan whatsoever." *Id.* at 641. Thus, the relevant question is not

16   whether Garcia knew that the crowd-control plan did not adequately deal with the risk of violence

17   from third parties, the question is whether Garcia knew that the adoption of the crowd-control plan

18   *increased* the risk of violence to the point that Plaintiffs would have been better off "had the police

19   not come up with any operational plan whatsoever." *Id.*

20        The only aspect of the crowd-control plan that Plaintiffs allege increased the danger to

21   Plaintiffs was the decision to close off certain streets and to have attendees to exit from the east-

22   northeast exit of the McEnery Convention Center toward Market Street, rather than allowing

23   attendees to exit in any direction. FAC ¶¶ 89–91. Plaintiffs allege that by requiring Plaintiffs to

24   exit only in this direction, Garcia led Plaintiffs into a crowd of anti-Trump protesters and therefore

25   subjected Plaintiffs to a risk that they would not otherwise have faced.

26        The Court "construe[s] the pleadings in the light most favorable to" Plaintiffs, and

27   therefore the Court assumes for the purposes of the instant motion that leading Plaintiffs from a

United States District Court
Northern District of California

28
Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

single exit did in fact increase the risk of harm to Plaintiffs. *Manzarek*, 519 F.3d at 1031. As discussed further below, Plaintiffs have sufficiently alleged that if police officers had allowed Plaintiffs to leave the Trump Rally out of any exit, Plaintiffs would not have been subjected to the same risk of harm by anti-Trump protesters. *See infra* Part III.A.ii.

However, even if the crowd-control plan did increase the risk of harm to Plaintiffs, Plaintiffs must also allege that Garcia "recognize[d]" the increased danger from using a single exit and "actually intend[ed]" by adopting that plan to expose Plaintiffs to such a danger. *Grubbs*, 92 F.3d at 899. In other words, Plaintiffs must allege that Garcia knew before the rally or was willfully blind to the fact that limiting Plaintiffs to this single exit would "place them in [a] worse position than they would have been in had the police not come up with any operational plan whatsoever." *Johnson*, 474 F.3d at 641.

Plaintiffs have not alleged that at the time Garcia developed the crowd-control plan, Garcia had any reason to believe that such a plan would increase the risk of harm to Plaintiffs. The FAC does not allege that Garcia knew where anti-Trump protesters were likely to be located, nor does the FAC allege that Garcia knew that Plaintiffs would be safer if they were allowed to leave in any direction.[1] Additionally, the FAC does not allege that Garcia knew that the crowd-control plan was so defective that Plaintiffs would be better off if police simply had no plan whatsoever.

Therefore, Plaintiffs have not alleged that Garcia had actual knowledge of or willful blindness to an elevated risk of harm from the adoption of the crowd-control plan. *Grubbs II*, 92

---

[1] In their Opposition, Plaintiffs state that since the filing of the FAC, Plaintiffs have acquired a copy of the City's crowd-control plan, which "required Plaintiffs to exit the Rally in the direction of one of two designated free speech zones . . . which the City Defendants knew, or should have known, would have contained anti-Trump protesters." Opp. at 6 n.2. The court may not consider this allegation because in deciding a motion to dismiss, a court may not "consider the facts that Plaintiff asserts only in its opposition." *Bd. of Trustees of the Bay Area Roofers Health & Welfare Trust Fund v. Gudgel Yancey Roofing Inc.*, 2016 WL 7049240, at *6 (N.D. Cal. Dec. 5, 2016). However, even if the Court took this fact into account, it would not change the Court's decision. Even if Garcia knew that the crowd-control plan might place Plaintiffs in rough proximity to anti-Trump protesters, this does not suggest that violence was an "obvious consequence of" Garcia's adoption of the crowd-control plan. *Bryan Cnty.*, 520 U.S. at 410. The contents of the plan certainly do not suggest that Garcia knew that the crowd-control plan was so deficient that Plaintiffs would have been better off "had the police not come up with any operational plan whatsoever. *See Johnson*, 474 F.3d at 641.

13

United States District Court
Northern District of California

1    F.3d at 900. Plaintiffs have not pleaded facts sufficient to meet the requirements of the state-

2    created danger doctrine. Thus, the Court finds that Plaintiffs have not stated § 1983 claim against

3    Garcia.

4           In granting the City Defendants' first motion to dismiss, the Court stated that "[f]ailure to .

5    . . cure the deficiencies identified in this Order will result in a dismissal with prejudice of

6    Plaintiffs' claims." ECF No. 30, at 17. Despite this explicit warning, in the FAC Plaintiffs failed to

7    make the necessary allegations regarding Plaintiffs' § 1983 claim against Garcia. Thus, because

8    Plaintiffs have failed to cure the deficiencies in the complaint, the Court concludes that further

9    amendment would be futile.[2] *See Lopez*, 203 F.3d at 1127 (holding that leave to amend is not

10   warranted when amendment would be futile). Additionally, granting leave to amend after an

11   explicit warning that failure to cure identified deficiencies would result in dismissal with prejudice

12   would cause "undue delay" and "undue prejudice to the opposing party." *See Leadsinger*, 512

13   F.3d at 532. The Court therefore dismisses Plaintiffs' § 1983 claims against Garcia with prejudice.

14                      **ii. Police Officers**

15          The Court next considers Plaintiffs' claim under the state-created danger doctrine against

16   Does 1–15 and the named police officers: Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul

17   Messier, Paul Spagnoli, Johnson Fong, and Jason Ta. Kinsworthy is a police captain, and Gannon,

18   Abruzzini, Messier, Spagnoli, Fong, and Ta are police lieutenants. FAC at 2. According to the

19   FAC, each of the police officers was "physically present at and/or outside the Rally." *Id.* ¶ 284.

20   Kinsworthy was allegedly involved in creation of the crowd-control plan before the Trump Rally,

21   *Id.* ¶ 87, and was the "primary point of contact for all units deployed at the Rally." *Id.* ¶ 72. Fong

22   was allegedly the "sub-commander at the Trump Rally" and acted as the "Commander for the

23   skirmish line." *Id.* ¶¶ 45, 74. The FAC does not specifically identify the roles of Gannon,

24

25   _____

26   [2] As noted above, in their Opposition Plaintiffs state that if given the opportunity to amend, Plaintiffs will add an allegation regarding the location of designated free speech zones in the crowd-control plan. *See supra* n.1. However, as discussed above, the Court finds that adding this allegation would not be sufficient to state a § 1983 claim against Garcia. Amendment to add this allegation would therefore be futile.

28                                      14

United States District Court
Northern District of California

1    Abruzzini, Messier, Spagnoli, and Ta, but all are allegedly lieutenants who were present at the

2    Trump Rally and directed Plaintiffs out of the convention center. *Id.* ¶ 304. Does 1–15 are other

3    unnamed police officers who were allegedly present at the Trump Rally. *Id.* ¶ 281.

4         Plaintiffs argue that the police officers exhibited deliberate indifference to a danger that

5    they created because the officers "acted according to the City's officially planned street closures

6    and policies permitting non-intervention, even where due process mandate[d] such intervention."

7    Opp. at 19. Plaintiffs allege that the police officers violated Plaintiffs' constitutional rights both

8    when Kinsworthy helped to devise the crowd-control plan before the Trump Rally, FAC ¶ 87, and

9    on the night of the Trump Rally when all of the officers continued to follow that plan after it

10   became clear that the plan was subjecting Plaintiffs to a serious risk of harm. Opp. at 11; FAC ¶

11   89.

12        The Court again applies the standard for the state-created danger doctrine. First, the Court

13   considers whether Plaintiffs have sufficiently alleged that the police officers' actions

14   "affirmatively place[d] the plaintiff[s] in a position of danger, that is, . . . state action create[d] or

15   expose[d] an individual to a danger which he or she would not have otherwise faced." *Id.* Next, the

16   Court considers whether Plaintiffs have sufficiently alleged that the police officers demonstrated

17   deliberate indifference—that is, the officers "kn[ew] that something [was] going to happen but

18   ignore[d] the risk and expose[d] [Plaintiffs] to it." *Id.* at 900.

19        Plaintiffs have sufficiently alleged that by leading Plaintiffs along a particular path out of

20   the convention center, the police officers took an affirmative action that exposed Plaintiffs to a

21   danger that Plaintiffs "would not have otherwise faced." *Johnson*, 474 F.3d at 639. Specifically,

22   Plaintiffs allege that the police officers actively prevented Plaintiffs and other Trump Rally

23   attendees from leaving the convention center by safer alternative routes. FAC ¶ 89. For example,

24   the FAC alleges that Plaintiff I.P. and his father attempted to turn right "to safety" after exiting the

25   convention center. *Id.* ¶ 161. However, a line of police officers allegedly forced I.P. and his father

26   to turn left, into the anti-Trump protesters, where I.P. was struck in the back of the head. *Id.* ¶ 162.

27   Additionally, Plaintiff Christina Wong and her son allegedly were prevented from exiting directly

28

15

to their car. *Id.* ¶ 204–06. Instead, after exiting from the only open exit of the convention center, Wong's son was assaulted. *Id.* ¶ 211. Thus, construing the facts alleged in the FAC in the light most favorable to Plaintiffs, the complaint plausibly suggests that by directing Plaintiffs in a particular direction from the Trump Rally, the police officers exposed Plaintiffs to a danger that they would not otherwise have faced.

Next, the Court considers whether Plaintiffs have sufficiently alleged that the police officers demonstrated deliberate indifference. In order to plead deliberate indifference, Plaintiffs must plead facts plausibly suggesting that the police officers either knew or were willfully blind to the risk posed by their actions. *Grubbs*, 92 F.3d at 900. As discussed above, Plaintiffs allege that the police officers violated the constitution both when Kinsworthy helped to devise the crowd-control plan before the Trump Rally and when all of the officers assisted with crowd control during and after the Trump Rally. The Court addresses these allegations in turn.

As with Garcia, Plaintiffs have not alleged specific facts showing that when Kinsworthy (along with Garcia and any other unknown actors) devised the crowd-control plan before the Trump Rally, Kinsworthy knew that leading Plaintiffs from the convention center on the designated path would increase the danger to Plaintiffs. As discussed above, Plaintiffs have argued that those who created the crowd-control plan knew of a risk of violence from anti-Trump protesters. However, Plaintiffs have not alleged that those who created the crowd-control knew that the designated path would *increase* the danger to Plaintiffs, let alone that doing so would increase the risk so substantially that Plaintiffs would be better off if "the police [had] not come up with any operational plan whatsoever. *See Johnson*, 474 F.3d at 641. Thus, Plaintiffs' allegations about Kinsworthy's actions before the Trump Rally are insufficient to state a claim. Plaintiffs do not allege that any other police officers violated the constitution through actions taken before the Trump Rally. The Court therefore DISMISSES Plaintiffs' claim against Kinsworthy to the extent that the claim is based on Kinsworthy's role in devising the crowd-control plan before the Trump Rally.

Although Kinsworthy was not named in Plaintiffs' original complaint, the original

16

United States District Court
Northern District of California

United States District Court
Northern District of California

1    complaint asserted claims against Kinsworthy as a Doe Defendant for his role in devising the

2    crowd-control plan. *See* FAC ¶ 157. In granting the City Defendants' first motion to dismiss, the

3    Court found that Plaintiffs had failed to state a claim against these Doe Defendants. The Court also

4    stated that "[f]ailure to . . . cure the deficiencies identified in this Order will result in a dismissal

5    with prejudice of Plaintiffs' claims." ECF No. 30, at 17. Despite this explicit warning, in the FAC

6    Plaintiffs failed to make the necessary allegations regarding Plaintiffs' § 1983 claim against

7    Kinsworthy based on his role in formulating the crowd-control plan. Thus, because Plaintiffs have

8    failed to cure the deficiencies in the complaint, the Court concludes that further amendment would

9    be futile. *See Lopez*, 203 F.3d at 1127 (holding that leave to amend is not warranted when

10   amendment would be futile). Additionally, granting leave to amend after an explicit warning that

11   failure to cure identified deficiencies would result in dismissal with prejudice would cause "undue

12   delay" and "undue prejudice to the opposing party." *See Leadsinger*, 512 F.3d at 532. The Court

13   therefore dismisses with prejudice Plaintiffs' § 1983 claim against Kinsworthy based on his role in

14   formulating the crowd-control plan.

15        The Court next considers Plaintiffs' allegations regarding the police officers' actions on

16   the night of the Trump Rally. Plaintiffs allege that after the Trump Rally, the police officers "were

17   fully aware of the volatile situation" and knew that anti-Trump protesters had begun to assault

18   rally attendees. FAC ¶ 1. Nevertheless, despite knowing that violence had already broken out and

19   was likely to continue, Plaintiffs claim that the police officers "continued to direct the Rally

20   attendees into the mob, deny Plaintiffs the ability to exit through alternative paths, and refuse to

21   direct the officers under their control to do so." Opp. at 12.

22        Unlike Plaintiffs' allegations regarding actions before the Trump Rally, Plaintiffs'

23   allegation that the police officers knew of the risk to Plaintiffs on the night of the Trump Rally is

24   supported by specific facts. Plaintiffs allege that as early as 6:00 p.m. on the night of the Trump

25   Rally, "the San Jose police warned all officers deployed around th[e] Rally that assaults had

26   already been reported outside the Rally." FAC ¶ 1. Additionally, Plaintiffs allege that an unnamed

27   officer told Plaintiff Christina Wong and her son "Good luck!" as the officer directed them

28
                                                    17

"towards the violent protest." *Id.* ¶ 284. Thus, Plaintiffs sufficiently allege that officers on the scene, including named and unnamed Defendants, were aware that the crowd-control plan was putting Plaintiffs in danger. Unlike Garcia, who devised the crowd-control plan beforehand, Plaintiffs allege that the police officers were present at or around the Trump Rally. FAC ¶ 284. Thus, construing the facts in the light most favorable to Plaintiffs, the police officers were in a position to know that anti-Trump protesters were targeting Plaintiffs along the designated exit path.

In short, Plaintiffs have not alleged that any of the City Defendants had any reason to know before the Trump Rally that the crowd-control plan was so deficient that Plaintiffs would have been better off if "the police [had] not come up with any operational plan whatsoever. *See Johnson*, 474 F.3d at 641. However, Plaintiffs have sufficiently alleged that the police officers present at the Trump Rally had reason to know that due to the location and unusual aggressiveness of the anti-Trump protesters, the crowd-control plan was in fact putting Plaintiffs in serious danger. *Cf id.* at 640 (suggesting that liability may be appropriate if police had "confine[d] the [plaintiffs] to a place where they would be exposed to a risk of harm by private persons").

Thus, Plaintiffs have stated a claim against the police officers for continuing to direct Plaintiffs into a dangerous area after the police officers became aware that the crowd-control plan was subjecting Plaintiffs to an increased risk of harm by anti-Trump protesters.

### 2. Qualified Immunity

City Defendants also argue that they are entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223 (2009). The Court may exercise its discretion

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

in deciding which prong to address first, in light of the particular circumstances of each case. *Id.*[3]

In assessing a qualified immunity defense on a motion to dismiss, a court must "regard all of the allegations in [the] complaint as true." *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999). A court should deny a motion to dismiss on the basis of qualified immunity if the complaint "allege[s] acts to which qualified immunity may not apply." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Under this standard, in many cases it is impossible to determine based on a complaint alone that qualified immunity is warranted. *Morley*, 175 F.3d at 761. In such circumstances, a court may deny a qualified immunity defense without prejudice and after further factual development a defendant may re-raise the qualified immunity issue "at summary judgment or at trial." *Id.*; *see also Treglia v. Kernan*, 2013 WL 4427253, at *3 (N.D. Cal. Aug. 15, 2013) (denying a motion to dismiss based on qualified immunity without prejudice).

In the instant case, City Defendants argue that they are entitled to qualified immunity because Plaintiffs have not "adduce[d] case law establishing that it would have been clear to 'a reasonable officer' that his decision to develop a dangerous crowd-control plan would violate the due process clause." Mot. at 11. However, as Plaintiffs point out, "the state-created danger doctrine is clearly established." Opp. at 12. As the Ninth Circuit held over ten years ago, "[i]t is beyond dispute that [when the alleged violation occurred] in September 1998, it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced." *Kennedy*, 439 F.3d at 1066. Thus, at the time of the Trump Rally, City Defendants were on notice that they could not affirmatively expose Plaintiffs to danger with deliberate indifference.

Additionally, Defendants were on notice that the state-created danger doctrine applied to police crowd-control decisions. In *Johnson v. City of Seattle*, 474 F.3d 634 (9th Cir. 2007), the Ninth Circuit applied the state-created danger doctrine to a crowd-control plan made by the City of Seattle. Although the Ninth Circuit found that the elements of the state-created danger doctrine

---

[3] In the instant case, the Court has exercised its discretion to first consider whether Plaintiffs sufficiently alleged the deprivation of a constitutional right. *See supra* Part III.A.1.

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

1   were not met because the City's plan did not place the plaintiffs in a worse position than they

2   would have been in with no police protection, *Johnson* nevertheless made clear that the state-

3   created danger doctrine applies to the conduct at issue in this case. *Id.* at 640–41.

4        Thus, at this stage of litigation, the Court cannot determine as a matter of law that qualified

5   immunity protects the police officers' actions on the night of the Trump Rally. Instead, as in most

6   cases, "[t]hose issues must be resolved at summary judgment or at trial." *Morley*, 175 F.3d at 761.

7   Therefore, City Defendants' motion to dismiss on the grounds of qualified immunity is DENIED

8   without prejudice.

9        **B. Claim Under 42 U.S.C. § 1983 Against the City**

10       The City Defendants move to dismiss Plaintiffs' claim under § 1983 against the City on the

11  grounds that the City is not vicariously liable for the actions of Garcia, the named police officers,

12  or Does 1–15 under *Monell v. Department of Social Services of the City of New York*, 436 U.S.

13  658, 691 (1987). Under *Monell*, a municipality is not liable under § 1983 unless "official

14  municipal policy of some nature caused a constitutional tort." *Id.* at 691. More specifically, "it is

15  when execution of a government's policy or custom, whether made by its lawmakers or by those

16  whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

17  government as an entity is responsible under § 1983." *Id.* at 694. To establish an official policy

18  that would give rise to *Monell* liability, a plaintiff may show (1) that "the individual who

19  committed the constitutional tort was an official with final policy-making authority," (2) that the

20  City failed to train its employees in circumstances such that "the government's omission . . .

21  amount[s] to 'deliberate indifference' to a constitutional right," or (3) that a policymaking official

22  "ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cty.*

23  *of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro v.*

24  *Cty. of Los Angeles*, 2016 WL 4268955 (9th Cir. Aug. 15, 2016).

25       In the FAC, Plaintiffs allege that the City is liable under § 1983 for four reasons. First,

26  Plaintiffs claim that "Police Chief Garcia acted as a final policymaker for the City when setting the

27  City's policy regarding the handling of civil disturbances at the Rally." *Id.* ¶ 293(b). Second,

United States District Court
Northern District of California

28

20

1   Plaintiffs claim that the City Defendants "acted in accordance with officially adopted and

2   promulgated City policies" including "the policies and procedures promulgated in the Duty

3   Manual and the City's action plan." FAC ¶ 293(a). Third, Plaintiffs claim that "the City failed to

4   train its officers not to deny Plaintiffs and the class members their ability [to] leave through

5   alternative, safe exits; failed to train its officers to not direct Plaintiffs and the class members

6   toward a dangerous mob; and failed to train its officers to protect Plaintiffs and the class members

7   from danger created by the Individual City Defendants' actions." *Id.* ¶ 293(c). Fourth, Plaintiffs

8   claim that "Police Chief Garcia ratified the Individual City Defendants' unconstitutional acts by

9   publicly declaring his support for those actions and by failing to reprimand officers for their

10  conduct." *Id.* ¶ 293(d). The Court addresses each of these claims in turn.

11          **1. Garcia as Policymaker for the City**

12          First, Plaintiffs allege that "Police Chief Garcia acted as a final policymaker for the City

13  when setting the City's policy regarding the handling of civil disturbances at the Rally." *Id.* ¶

14  293(b). For the purpose of § 1983 claims, official policies may include "fixed plans of action to be

15  followed under similar circumstances consistently and over time" as well as "course[s] of action

16  tailored to a particular situation and not intended to control decisions in later situations." *Pembaur

17  v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). Therefore, if Garcia's creation of the crowd-

18  control plan were a constitutional violation, the Court would have to consider whether creation of

19  this plan for a single event was sufficient to set policy for the City. However, as discussed above,

20  Plaintiffs have not sufficiently alleged that Garcia's creation of the crowd-control plan before the

21  Trump Rally violated Plaintiffs' due process rights. Therefore, even if this plan was an official

22  policy of the City, this official policy would not constitute a violation of Plaintiffs' due process

23  rights. Thus, Plaintiffs allegation that Garcia acted as policymaker for the City is insufficient to

24  subject the City to liability under *Monell*.

25          **2. Policies in City Documents**

26          Second, Plaintiffs allege that City Defendants' unconstitutional actions were taken in

27  accordance with City policy as expressed in documents such as "the Duty Manual and the City's

28

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  action plan created by the City, Police Chief Garcia, Captain Kinsworthy, and/or DOES 1–15,

2  specifically for the Rally." FAC ¶ 293(a). As discussed above, the Court has found that the

3  creation of the City's action plan before the Trump Rally, whether by Garcia, Kinsworthy, or other

4  unknown actors, did not violate Plaintiffs' due process rights. Thus, even if the plan were the

5  official policy of the City, this would not subject the City to liability under *Monell*.

6        The other documents to which Defendants point, including the Duty Manual, also do not

7  create a policy of unconstitutionally exposing people to danger by third parties. To the contrary, as

8  City Defendants point out in their motion, "the only policy [from the duty manual that] Plaintiffs

9  explicitly set forth in their FAC . . . appears to instruct the opposite."  FAC ¶ 66 ("Where a

10  demonstrator uses physical violence upon another person or property, officers should promptly

11  make an arrest . . . ."). Indeed, the FAC alleges that City Defendants are liable under § 1983

12  because they *violated* the City's "normal 'zero tolerance' approach to violent protesters." *Id.* ¶ 79

13  ("Instead of following the City's normal "zero tolerance" approach to violent protesters, by

14  making targeted arrests during the protest, the City implemented an entirely different policy.")

15  (emphasis in original). Thus, Plaintiffs have pointed to no documents that created an

16  unconstitutional policy of exposing people to harm from third parties.

17      **3. Failure to Train**

18        Third, Plaintiffs allege that "the City failed to train its officers not to deny Plaintiffs and

19  the class members their ability [to] leave through alternative, safe exits; failed to train its officers

20  to not direct Plaintiffs and the class members toward a dangerous mob; and failed to train its

21  officers to protect Plaintiffs and the class members from danger created by the Individual City

22  Defendants' actions." *Id.* ¶ 293(c).

23        In order to establish that a municipality is liable under § 1983 for failure to train, Plaintiffs

24  must allege that a particular training deficiency was so egregious that it "amount[ed] to deliberate

25  indifference to the rights of persons with whom the police come into contact." *City of Canton v.*

26  *Harris*, 489 U.S. 378, 388 (1989). To make such a showing, Plaintiffs must show a pattern of

27  similar constitutional violations or otherwise demonstrate that training was obviously necessary to

28  

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

avoid constitutional violations. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."); *City of Canton*, 489 U.S. at 390 ("[I]t may happen that . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.").

In the FAC, Plaintiffs allege that the City was on notice of the need to train because "violence had already occurred at other Trump rallies." FAC ¶ 293(c). Despite this "ample and advanced warning," Plaintiffs allege that the City "failed to train its officers to appropriately respond to similar acts of violence that occurred after the Rally in this case." *Id.*

However, as discussed above, the mere fact that the City Defendants failed to adequately contain and prevent violence by anti-Trump protesters is insufficient to state a claim for violation of Plaintiffs' due process rights. *See DeShaney*, 489 U.S. at 202 (holding that the state's failure to protect a plaintiff from harm by third parties—"though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause"); *see also Johnson*, 474 F.3d at 641 (finding no constitutional violation from a crowd-control plan because police "did not place [the plaintiffs] in any worse position than they would have been in had the police not come up with any operational plan whatsoever").

Therefore, the mere fact that some violence had occurred at other Trump Rallies is insufficient to demonstrate a "pattern of similar constitutional violations" that put the City on notice of a specific need for training. *Connick*, 563 U.S. at 62. Even if violence had occurred at other Trump Rallies, *DeShaney* and other cases make clear that the City was under no constitutional obligation to take steps to prevent such violence. Thus, the City also had no constitutional obligation to train police officers to take steps to prevent such violence.

Instead, as discussed above, the only constitutional violation that Plaintiffs have sufficiently alleged is that the police officers continued to direct Plaintiffs in the direction designated by the crowd-control plan after realizing that doing so placed Plaintiffs in serious

United States District Court
Northern District of California

1    danger. Plaintiffs do not allege that the City Defendants had any reason to know in advance that

2    the crowd-control plan might be worse for Plaintiffs than no police presence at all, let alone that

3    there was a pattern of similar issues sufficient to put the City on notice of a need for specific

4    training about the issue.

5        Therefore, Plaintiffs have not alleged facts showing that the City was aware of a need for

6    training on this issue, and Plaintiffs certainly have not established that the City's training

7    deficiency was so egregious that it "amount[ed] to deliberate indifference to the rights of persons

8    with whom the police come into contact." *City of Canton*, 489 U.S. at 388. Thus, Plaintiffs have

9    not stated a claim for *Monell* liability under a failure to train theory.

10        **4. Ratification of the Actions of City Employees**

11       Finally, Plaintiffs allege that "Police Chief Garcia ratified the Individual City Defendants'

12   unconstitutional acts by publicly declaring his support for those actions and by failing to

13   reprimand officers for their conduct." *Id.* ¶ 293(d). Specifically, Plaintiffs claim that after the rally,

14   Garcia did not discipline any of the police officers involved and stated that "[o]ur officers should

15   be commended for both their effectiveness and their restraint."

16       Under Ninth Circuit law, a plaintiff states a claim under *Monell* if the plaintiff alleges that

17   the "authorized policymakers approve a subordinate's decision and the basis for it." *Christie v.*

18   *Iopa*, 176 F.3d 1231, 1239 (9th Cir.1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

19   (1988)). Specifically, "[p]olicy or custom may be inferred if, after the [incident] . . . officials took

20   no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards'

21   conduct was in error." *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir.1986); *see also Gomez v.*

22   *Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("A policy or custom may be found either in an

23   affirmative proclamation of policy or in the failure of an official 'to take any remedial steps after

24   the violations.'") (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991).

25       In their motion to dismiss, the City Defendants concede that "Chief Garcia, as head of

26   police, [was] aware of his officers' actions at the rally and the reasons for them" at the time that

27   Garcia "commended" the officers after the Trump Rally. Mot. at 7. Nevertheless, the City

28
    24

1   Defendants argue that Garcia's statements approving of police officers' actions merely "show a

2   police chief fulfilling his role as the public face for his department." *Id.* However, this argument

3   shows precisely why Garcia's statements approving of the police officers' actions can give rise to

4   liability under *Monell*. Acting as the public face of the police department, and with knowledge of

5   "his officers' actions at the rally and the reasons for them," *id.*, Garcia allegedly made "statements

6   . . . tending to show that [he] endorsed or approved the unconstitutional conduct of individual

7   officers." *Dorger v. City of Napa*, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012). Under

8   Ninth Circuit law, this "evinces ratification" and therefore is sufficient to plausibly allege that the

9   police officers' actions constituted municipal policy. *Id.*; *see also Christie*, 176 F.3d at 1240

10  (holding that *Monell* liability is appropriate if a representative of the municipality "affirmatively

11  approved" of the allegedly unconstitutional conduct").

12      City Defendants also argue that Plaintiffs "have not alleged facts showing that Chief

13  Garcia had the legal authority to make . . . policy" in the area of police matters. Mot. 13. However,

14  Plaintiffs have alleged that as Police Chief, Garcia was a "competent authority" in the area of

15  police matters. FAC ¶ 309; *see also id.* ¶ 78. Because a police chief is likely to have authority in

16  the area of police matters, Plaintiffs' allegation is plausible even without citations to specific

17  portions of the City Charter or other provisions of state law. *Cf. Larez v. City of Los Angeles*, 946

18  F.2d 630, 646 (9th Cir. 1991) (finding that police chief had policymaking authority on police

19  matters); *Chew v. Gates*, 27 F.3d 1432, 1436 (9th Cir. 1994) (same); *Clark v. City of Tucson*, 238

20  F.3d 427 (9th Cir. 2000) (same).

21      Therefore, Plaintiffs allegations regarding Garcia's statements after the Trump Rally and

22  Garcia's failure to reprimand police officers are sufficient to state a claim that the municipality

23  ratified the police officers' allegedly unconstitutional actions.

24      In short, in conformity with the Court's previous findings, the Court finds that Plaintiffs'

25  allegations regarding City Defendants' actions before the Trump Rally in devising the crowd-

26  control plan are not sufficient to state a claim under § 1983 against the City. However, the Court

27  finds that Garcia's statements after the Trump Rally praising the actions of police officers are

28

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   sufficient to state a claim that the City is liable for the police officers' allegedly unconstitutional

2   actions in directing Plaintiffs along a particular path after realizing that doing so placed Plaintiffs

3   in danger.

4   **5. Summary**

5   For the reasons discussed above, the Court GRANTS the City Defendants' motion to

6   dismiss the § 1983 claim against the City to the extent that the claim is based on the adoption of a

7   policy in City documents prior to the Trump Rally, on the adoption of a policy by Garcia prior to

8   the Trump Rally, or on the City's failure to train. The Court considered and rejected these same

9   arguments in granting the City Defendants' first motion to dismiss. ECF No. 30, at 16–18. The

10  Court also stated that "[f]ailure to . . . cure the deficiencies identified in this Order will result in a

11  dismissal with prejudice of Plaintiffs' claims." ECF No. 30, at 17. Despite this explicit warning,

12  Plaintiffs failed to cure these deficiencies. Thus, because Plaintiffs have failed to cure the

13  deficiencies in the complaint, the Court concludes that further amendment would be futile. *See*

14  *Lopez*, 203 F.3d at 1127 (holding that leave to amend is not warranted when amendment would be

15  futile). Additionally, granting leave to amend after an explicit warning that failure to cure

16  identified deficiencies would result in dismissal with prejudice would cause "undue delay" and

17  "undue prejudice to the opposing party." *See Leadsinger*, 512 F.3d at 532. Therefore, to the extent

18  that the § 1983 claim against the City is based on the adoption of a policy in City documents prior

19  to the Trump Rally, on the adoption of a policy by Garcia prior to the Trump Rally, or on the

20  City's failure to train, the Court dismisses this claim with prejudice.

21  However, for the reasons discussed above, the Court DENIES the City Defendants' motion

22  to dismiss the § 1983 claim against the City to the extent that the claim is based on Garcia's

23  alleged ratification of the police officers' actions after the Trump Rally.

24  **C. Bane Act Claim**

25  In the FAC, Plaintiffs assert a claim under the Tom Bane Civil Rights Act ("Bane Act"),

26  CAL. CIV. CODE § 52.1, against each of the City Defendants: the City, Garcia, Officers

27  Kinsworthy, Gannon, Abruzzini, Messier, Spagnoli, Fong, and Ta, and Does 1–15. The Bane Act

United States District Court
Northern District of California

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

1  punishes any "person or persons, whether or not acting under color of law, [who] interferes by

2  threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with

3  the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or

4  laws of the United States, or of the rights secured by the Constitution or laws of this state." CAL.

5  CIV. CODE § 52.1(a). The Bane Act also provides a cause of action for anyone whose rights are

6  harmed in this way. CAL. CIV. CODE § 52.1(b). In order to state a claim under the Bane Act,

7  Plaintiffs must allege "(1) interference with or attempted interference with a state or federal

8  constitutional or legal right, and (2) the interference or attempted interference was by threats,

9  intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

10  Plaintiffs claim that the City Defendants violated the Bane Act in three ways. First,

11  Plaintiffs allege that "[t]he City Defendants instructed police officers to require the Plaintiffs and

12  the Class members to exit the convention center in the direction of the violent mob." FAC ¶ 299.

13  Second, Plaintiffs allege that City Defendants "failed to assist Plaintiffs and the Class members

14  after directing them to the dangerous situation." *Id.* Third, Plaintiffs allege that the City

15  Defendants "prevented Plaintiffs and the Class members from using alternative, safer routes." *Id.*

16  Plaintiffs allege that each of these actions violated the constitution and "constitute[d] threats,

17  intimidation, or coercion." *Id.* Plaintiffs do not argue that the violence of the mob itself constituted

18  threats, intimidation, or coercion for the purposes of Plaintiffs' Bane Act claims against the City

19  Defendants. The Court addresses each of Plaintiffs' allegations in turn.

20  First, the Court addresses Plaintiffs' allegations regarding the City Defendants' instructions

21  to Plaintiffs. As discussed above, the Court has found that the City Defendants' planning of the

22  crowd-control plan did not constitute a constitutional violation. Therefore, this conduct also

23  cannot form the predicate for a Bane Act violation. *See* ECF No. 30, at 18–19 (dismissing

24  Plaintiffs' Bane Act claim because Plaintiffs had not stated a claim for a constitutional violation).

25  Second, the Court addresses Plaintiffs' allegations that the City Defendants used threats,

26  intimidation, or coercion by failing to assist Plaintiffs. Threats, intimidation, and coercion all

27  involve affirmative acts. *See Meyers v. City of Fresno*, 2011 WL 902115, at *7 (E.D. Cal. Mar. 15,

28  
27

1    2011) (Coercion is 'the application to another of such force, . . . as to constrain him to do against

2    his will something he would not otherwise have done.") (quoting *Ex Parte Bell*, 19 Cal.2d 488,

3    526 (1942)). A failure to assist Plaintiffs, on the other hand, is a failure to act rather than an

4    affirmative act violating Plaintiffs' constitutional rights. Plaintiffs do not cite any cases holding

5    that a failure to act can constitute threats, intimidation, or coercion. Therefore, the Court holds that

6    the City Defendants' failure to intervene does not constitute threats, intimidation, or coercion

7    under the Bane Act.

8         Finally, the Court considers Plaintiffs' allegation that officers used threats, intimidation, or

9    coercion by preventing Plaintiffs from leaving out of alternative exits. Plaintiffs do not explain

10   how closing certain streets and exits could constitute threats, intimidation, or coercion. Plaintiffs

11   do not allege that police ever threatened Plaintiffs or that police physically touched Plaintiffs at all.

12   Construing the complaint most favorably to Plaintiffs, Plaintiffs may be alleging that by closing

13   off certain exits, police forced Plaintiffs into the one designated path, and that there was an

14   implied threat of physical force if Plaintiffs attempted to use an alternative exit.

15        However, these allegations are insufficient to establish that the alleged constitutional

16   violation was accomplished "by threats, intimidation, or coercion." *Allen*, 234 Cal. App. 4th at 67.

17   The decision in *Allen* is instructive. In *Allen*, homeless individuals and two people providing

18   services to the homeless sued Sacramento City police. *Id.* at 46. The plaintiffs had been camping

19   on a private lot with permission of the owner, but police informed the plaintiffs that they were

20   violating a city ordinance by camping on public or private property without a City permit. *Id.*

21   After issuing two citations, police eventually arrested the plaintiffs. *Id.* The plaintiffs claimed that

22   police violated the Bane Act because "an arrest is inherently coercive." *Id.* at 675–76.

23        The California Court of Appeals rejected this argument. The Court held that the Bane Act

24   "requires threats, coercion, or intimidation in addition to a constitutional violation, and the

25   plaintiff cannot graft one act onto two distinct burdens." *Id.* at 677–78 (citing *Santiago v. Keyes*,

26   890 F. Supp. 2d 149, 155–56 (D. Mass. 2012)). Specifically, the Court found that "wrongful arrest

27   or detention, without more, does not satisfy" the Bane Act. *Id.* 69; *see also Shoyoye v. County of*

United States District Court
Northern District of California

28

28

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

*Los Angeles*, 203 Cal. App. 4th 947, 958 (2012) ("[W]e conclude that where coercion is inherent in the constitutional violation alleged, . . . the statutory requirement of 'threats, intimidation, or coercion' is not met.").

In the instant case, Plaintiffs do not even allege that they were actually arrested or physically detained. Instead, Plaintiffs merely allege that barriers and the presence of officers prevented them from leaving the convention center out of certain exits. FAC ¶ 299. However, as discussed above, this is the same conduct that Plaintiffs allege constituted the constitutional violation. Plaintiffs provide no additional allegations establishing that this alleged constitutional violation was accomplished by means of threats, intimidation, or coercion.

Indeed, if the conduct of which Plaintiffs complain constituted threats, intimidation, or coercion, then essentially any instruction from police officers would also qualify as threats, intimidation, or coercion. Nearly all instructions from police officers come with the implied threat that if the person does not obey the instruction, the police officer may use coercive means to force compliance or even arrest the person. *See* Cal. Penal Code § 148(a)(1) ("Every person who willfully resists, delays, or obstructs any public officer, . . . shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year . . . ."). If this possibility of coercive force were enough to constitute "threats, intimidation, or coercion" for the purposes of the Bane Act, all constitutional violations by police officers would also be Bane Act violations. However, *Allen*, *Shoyoye*, and other decisions make clear that this is not the case. Instead, Plaintiffs must allege coercion beyond the *de minimis* possibility of coercion inherent in a police officer's instruction that someone avoid a particular area. *See also Rodgers v. City of Pasadena*, 2016 WL 7240135, at *3 (C.D. Cal. Dec. 12, 2016) (finding that a plaintiff had not stated a Bane Act claim against a police officer who "forced [the plaintiff] to walk outside to the sidewalk").

Plaintiffs argue that to state a Bane Act claim, Plaintiffs need only show that the constitutional interference was intentional, and "deliberate indifference" qualifies as intentional conduct for the purposes of a Bane Act claim. Opp. at 19 (citing *M.H. v. Cty. of Alameda*, 90 F.

United States District Court
Northern District of California

1   Supp. 3d 889, 898 (N.D. Cal. 2013)). Plaintiffs are correct that *M.H.* and some other federal

2   district court cases have addressed *Shoyoye*'s rule that threats, intimidation, or coercion inherent in

3   the constitutional violation are insufficient to state a claim and have held that "*Shoyoye* applies

4   only when the conduct is unintentional." *M.H.*, 90 F. Supp. 3d at 898; *see also, e.g.*, *Bass v. City of*

5   *Fremont*, 2013 WL 891090, at *6 (N.D. Cal. Mar. 8, 2013) (limiting *Shoyoye* to violations

6   involving "human error rather than intentional conduct"); *but see Luong v. City & Cnty. of San*

7   *Francisco*, 2012 WL 5869561, at *7–*8 (N.D. Cal. Nov. 19, 2012) (declining to limit *Shoyoye* to

8   unintentional conduct); *Hunter v. City & Cnty. of San Francisco*, 2012 WL 4831634, at *5–*6

9   (N.D. Cal. Oct. 10, 2012) (same); *Lanier v. City of Fresno*, 2011 WL 149802, at *4 (E.D. Cal. Jan.

10   18, 2011) ("[A]llegations of excessive force do not equate to section 52.1 threats, intimidation or

11   coercion . . . ."). Plaintiffs are also correct that *M.H.* held that deliberate indifference qualifies as

12   intentional conduct for the purposes of a Bane Act claim. *M.H.*, 90. F. Supp. 3d at 898.

13        However, *M.H.* was decided before *Allen*, which reaffirmed the rule of *Shoyoye* in a case

14   involving "intentional conduct that allegedly violated plaintiff's rights, not negligence or human

15   error as in *Shoyoye*." *Harrington-Wisely v. State*, 2015 WL 1915483, at *7 (Cal. Ct. App. Apr. 28,

16   2015) (unpublished). Additionally, in *Lyall v. City of Los Angeles*, 807 F.3d 1178 (9th Cir. 2015),

17   the Ninth Circuit followed *Allen* and held that in search-and-seizure cases, which also involve

18   intentional conduct rather than negligence, a plaintiff "must allege threats or coercion beyond the

19   coercion inherent in a detention or search in order to recover under the Bane Act." *Id.* at 1196.

20        In light of *Allen* and *Lyall*, the Court rejects Plaintiffs' argument that any intentional act

21   qualifies as "threats, intimidation, or coercion" for the purpose of a Bane Act claim. Some

22   constitutional violations may be serious enough that the coercion inherent in those violations is

23   enough to constitute coercion for the purposes of a Bane Act claim. *See Adamson v. City of San*

24   *Francisco*, 2015 WL 5467744, at *2, *9 (N.D. Cal. Sept. 17, 2015) (distinguishing *Allen* in a case

25   involving excessive use of force when plaintiff was allegedly "slam[med] . . . to the ground.").

26   However, like an arrest or a search-and-seizure, the coercion inherent in police officers' use of

27   barricades and instructions to direct a crowd is minimal. Therefore, following *Allen* and *Lyall*, the

28   
Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1  Court holds that in order to state a Bane Act claim, Plaintiffs must allege coercion separate from

2  the minimal coercion inherent in the alleged constitutional violation in the instant case. *See also*

3  *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("In the

4  absence of a controlling California Supreme Court decision, [a federal court] must predict how the

5  California Supreme Court would decide the issue, using intermediate appellate court decisions,

6  statutes, and decisions from other jurisdictions as interpretive aids.").

7           As discussed above, Plaintiffs have failed to allege any threats, intimidation, or coercion in

8  connection with the alleged constitutional violation. Even if the police officers' refusal to allow

9  Plaintiffs to "us[e] alternative, safer routes" was coercive in some minimal sense, FAC ¶ 299, the

10 coercion was inherent in the constitutional violation and thus is not enough to support a Bane Act

11 claim under *Allen*.  Therefore, Plaintiffs' "conclusory allegations of 'forcible' and 'coercive'

12 interference with plaintiffs' constitutional rights are inadequate to state a cause of action for a

13 violation of section 52.1." *Id.* at 678.

14          In granting the City Defendants' first motion to dismiss, the Court stated that "[f]ailure to . .

15 . . cure the deficiencies identified in this Order will result in a dismissal with prejudice of

16 Plaintiffs' claims." ECF No. 30, at 17. Despite this explicit warning, Plaintiffs failed to make the

17 necessary allegations in the FAC. Thus, because Plaintiffs have failed to cure the deficiencies in

18 the complaint, the Court concludes that further amendment would be futile. *See Lopez*, 203 F.3d at

19 1127 (holding that leave to amend is not warranted when amendment would be futile).

20 Additionally, granting leave to amend after an explicit warning that failure to cure identified

21 deficiencies would result in dismissal with prejudice would cause "undue delay" and "undue

22 prejudice to the opposing party." *See Leadsinger*, 512 F.3d at 532. The Court therefore dismisses

23 Plaintiffs' Bane Act claims with prejudice.

24     **D. Negligence Claim**

25          As in the original complaint, Plaintiffs assert a negligence claim against the City, alleging

26 that "[p]ursuant to Government Code § 815.2(a), the City is vicariously liable for the negligent

27 actions of Captain Kinsworthy, and Lieutenants Gannon, Abruzzini, Messier, Spagnoli, Fong, and

28
                                              31
Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

1  Ta, and DOES 1-15." FAC ¶ 304.[4] In the FAC, Plaintiffs have also added a claim that the City is

2  vicariously liable for Garcia's negligence in devising the crowd-control plan before the Trump

3  Rally. *Id.* ¶ 305. However, in granting the City Defendants' first motion to dismiss, the Court

4  stated that "Plaintiffs may not add new causes of action or parties without leave of the Court or

5  stipulation of the parties." ECF No. 30, at 26. Plaintiffs never filed a stipulation or motion for

6  leave to add a negligence claim based on Garcia's actions prior to the Trump Rally. Therefore, the

7  Court STRIKES as procedurally improper the negligence claim against the City based on Garcia's

8  actions prior to the Trump Rally. Even if this claim were procedurally proper, the Court would

9  dismiss it because Plaintiffs have not alleged that prior to the Trump Rally, Garcia had any reason

10  to believe that the crowd control plan might increase the danger to Plaintiffs. *See People v. Oliver*,

11  210 Cal. App. 3d 138, 147 (1989) (holding that a negligence claim based on harm from third

12  parties is viable only in limited circumstances, such as "where some act or omission on the part of

13  the defendant . . . created or increased the risk of injury to the plaintiff . . . .").

14       The Court thus considers only the negligence claim based on police officers' actions on the

15  night of the Trump Rally. The City Defendants move to dismiss Plaintiffs' negligence claim based

16  on California Government Code § 820.2, which provides that "a public employee is not liable for

17  an injury resulting from his act or omission where the act or omission was the result of the

18  exercise of discretion vested in him, whether or not such discretion be abused." City Defendants

19  claim that the decision to have Plaintiffs leave the convention center out of only one exit was

20  "precisely the type of discretionary act that entitles a governmental decision-maker to immunity."

21  Mot. at 16.

22       In their Opposition, Plaintiffs claim that by raising the issue of § 820.2 immunity for the

23  first time in a second-round motion to dismiss, the City Defendants violated Federal Rule of

24  Procedure ("Rule") 12(g)(2). Opp. at 19–20. Rule 12(g)(2) provides that "[e]xcept as provided in

25

26  _____

27  [4] The original complaint contained a negligence claim against the City based on the actions of
these same police officers as Doe Defendants. Compl. ¶¶ 180–85.

28
Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2), in turn, provides that arguments which pertain to a plaintiff's "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."[5] To summarize, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense pertaining to a failure to state a claim that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial. Thus, if the defense of § 820.2 immunity was available to the City Defendants in the first motion to dismiss and the City Defendants failed to raise the defense in the first motion to dismiss, then the City Defendants may not raise the defense in the instant second-round motion to dismiss.

The City Defendants have not argued that the § 820.2 immunity defense was unavailable to them at the time of the first motion to dismiss. The first complaint also involved extensive allegations about the City Defendants' crowd-control plan, and there was no reason that the City Defendants could not have asserted that the crowd-control plan was a discretionary act that was potentially subject to § 820.2 immunity. Thus, the Court finds that the § 820.2 immunity defense was reasonably available to the City Defendants at the time of the first motion to dismiss.

However, although the § 820.2 immunity defense was available to City Defendants at the time of the first motion to dismiss, the City Defendants did not assert this defense in the first-round motion to dismiss. The first-round motion contained no reference to § 820.2 and never discussed or mentioned discretionary act immunity. Additionally, the City Defendants have offered no reason for their failure to assert § 820.2 immunity in the first motion to dismiss.

Therefore, under Rule 12(g)(2), the City Defendants may not raise the defense of § 820.2 immunity for the first time in a second-round motion to dismiss. Instead, under Rule 12(g)(2) and Rule 12(h)(2), the City Defendants may argue that Plaintiffs have failed to state a claim because of

---

[5] Rule 12(h)(3), which allows a court to consider subject matter jurisdiction at any time, is not relevant to the instant motion.

1  § 820.2 immunity in a pleading, a Rule 12(c) motion, or at trial.

2  In their Reply, the City Defendants argue that they "did not 'omit' the relevant defense

3  from their motion to dismiss the first complaint—as in the present motion, City Defendants argued

4  there that Plaintiffs had failed to state a negligence claim" Reply at 12 n.5. However, a number of

5  cases make clear that a defendant must specifically address a defense in order to maintain the right

6  to raise that defense in a later motion to dismiss. For example, in *Herron v. Best Buy Stores, LP*,

7  2013 WL 4432019, *4 (E.D. Cal. Aug. 16, 2013), defendant Toshiba had "failed to squarely raise

8  [an] argument in its initial dismissal motion, even though the argument was available to Toshiba

9  when it originally sought to dismiss Plaintiff's complaint." Accordingly, "this portion of Toshiba's

10  dismissal motion [was] not considered." *Id.* Similarly, in *Northstar Financial Advisors Inc. v.*

11  *Schwab Investments*, 135 F. Supp. 3d 1059 (N.D. Cal. 2015), the court found that because

12  defendants had not argued a particular preemption defense in an earlier 12(b) motion, the

13  defendants could not raise that issue in a later 12(b) motion, but could raise it in a later 12(c)

14  motion. *See In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *44 (N.D. Cal. May 27,

15  2016) (applying the same reasoning to a defendant's belated attempt to argue that a claim was

16  preempted by ERISA).

17  In short, the purpose of Rule 12(g) is to provide for "an omnibus pre-answer motion in

18  which the defendant advances every available Rule 12 defense and objection he may have that is

19  assertable by motion." Wright & Miller, 5C Federal Practice & Procedure § 1384, 479 (3d ed.

20  2004). By neglecting to mention § 820.2 in their first motion to dismiss, City Defendants

21  frustrated this purpose and failed to give the Court notice of an issue that may have been

22  dispositive. Therefore, pursuant to Rule 12(g)(2), the Court will not consider the City Defendants'

23  claims of immunity under § 820.2.

24  Section 820.2 is the only ground that the City Defendants assert for dismissal of Plaintiffs'

25  negligence claim. Therefore, because the Court cannot consider the City Defendants' argument

26  under § 820.2, the Court DENIES the City Defendants' motion to dismiss Plaintiffs' negligence

27  claim.

28

United States District Court
Northern District of California

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS with prejudice the motion to dismiss Plaintiffs' claim against Defendant Garcia for violation of the Fourteenth Amendment under 42 U.S.C. § 1983. The Court GRANTS with prejudice the motion to dismiss Plaintiffs' claim under § 1983 against Captain Kinsworthy to the extent that that claim is based on Kinsworthy's actions in developing the crowd-control plan before the Trump Rally. However, the Court DENIES the motion to dismiss Plaintiffs' claims under § 1983 against Captain Kinsworthy and Lieutenants Gannon, Abruzzini, Messier, Spagnoli, Fong, and Ta to the extent that those claims are based on those officers' actions during and after the Trump Rally after allegedly realizing that the crowd-control was placing Plaintiffs in danger.

The Court DENIES without prejudice the motion to dismiss Plaintiffs' § 1983 claims on the basis of qualified immunity.

The Court GRANTS with prejudice the motion to dismiss Plaintiffs' § 1983 claim against the City to the extent that the claim is based on the adoption of a policy by Garcia prior to the Trump Rally, on the adoption of a policy in City documents prior to the Trump Rally, or on the City's failure to train. However, the Court DENIES the motion to dismiss Plaintiffs' § 1983 claim against the City to the extent that the claim is based on Garcia's alleged ratification of the actions of officers after the Trump Rally.

The Court GRANTS with prejudice the motion to dismiss Plaintiffs' claim under the Bane Act, CAL. CIV. CODE § 52.1, against the City, Garcia, Officers Kinsworthy, Gannon, Abruzzini, Messier, Spagnoli, Fong, and Ta, and Does 1–15.

The Court STRIKES Plaintiffs' negligence claim based on Garcia's actions before the Trump Rally as procedurally improper. The Court DENIES the motion to dismiss Plaintiffs' negligence claim against the City based on the actions of Kinsworthy, Gannon, Abruzzini, Messier, Spagnoli, Fong, and Ta, and DOES 1-15. The City Defendants may re-raise California Government Code § 820.2 in a pleading, a 12(c) motion, or at trial, in accordance with Rule 12(g)(2) and Rule 12(h)(2).

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: March 14, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 16-CV-03957-LHK
ORDER GRANTING IN PART WITH PREJUDICE AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California