UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JUAN HERNANDEZ, et al., | Case No. 16-CV-03957-LHK |
| Plaintiffs, | **ORDER SEVERING CLAIMS, DISMISSING ACTIONS WITHOUT PREJUDICE, AND STAYING ACTION** |
| v. | |
| CITY OF SAN JOSE, et al., | Re: Dkt. Nos. 82, 84 |
| Defendants. | |

On March 14, 2017, the Court found that San Jose police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta were not entitled to qualified immunity and thus denied Defendants' motion to dismiss Plaintiffs' claim against these officers under 42 U.S.C. § 1983. ECF No. 72, at 35. On March 28, 2017, the City Defendants appealed this ruling to the Ninth Circuit Court of Appeals.

Before the Court are the City of San Jose and San Jose police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta's (collectively, "City Defendants") motion to stay pending appeal, ECF No. 82, and motion to sever misjoined parties, ECF No. 84. Having considered the briefing of the parties, the record in the case, and the relevant law, the Court SEVERS the claims against the individual private citizen Defendants and DISMISSES the claims without prejudice for refiling in state court. The Court

also STAYS the remainder of the case against the City Defendants pending resolution of the City Defendants' appeal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Original Complaint and First Motion to Dismiss

The instant action began with a complaint filed on July 14, 2016. ECF No. 1. In the complaint, fourteen Plaintiffs asserted twenty-eight claims for relief against six named Defendants. Compl. ¶¶ 153–336. The original complaint sued the City of San Jose ("City"), Mayor Sam Liccardo ("Liccardo"), and Chief of Police Edgardo Garcia ("Garcia") for violations of federal and state law arising from their actions around the time of a June 2, 2016 rally for then-presidential candidate Donald Trump. *Id.* Individual police officers were not yet named in the original complaint, but instead were sued as 15 Doe Defendants (together with the City, Liccardo, and Garcia, "original complaint City Defendants"). *Id.* Plaintiffs' complaint also sought to represent a class consisting of "[a]ll persons who attended the June 2, 2016 Trump Rally at the McEnery Convention Center in San Jose, California, and exited the rally from the east-northeast exit." *Id.* ¶ 146. The original complaint also asserted various state law claims by individual Plaintiffs against Defendants H.A., S.M., Anthony Yi , and 32 Doe Defendants, all of whom are individual private citizens with no connection to the original complaint City Defendants. *Id.* ¶¶ 186–336.

The original complaint City Defendants filed a motion to dismiss the original complaint on August 4, 2016. ECF No. 6. The motion sought to dismiss all four claims against the original complaint City Defendants, which were as follows: (1) a claim under 42 U.S.C. § 1983 against Liccardo, Garcia, and the City for violation of Plaintiffs' rights under the First and Fourteenth Amendments (Count 1); (2) a claim for violation of the Bane Act, CAL. CIV. CODE § 52.1, against Liccardo, Garcia, and the City (Count 2); (3) a claim for violation of the Ralph Act, CAL. CIV. CODE § 51.7, against Liccardo, Garcia, and the City (Count 3); and (4) a California common law negligence claim against Does 1–15 and the City as employer of Does 1–15 (Count 4). Compl. ¶ 153–85.

On October 13, 2016, the Court granted in part and denied in part the motion to dismiss. ECF No. 30. The Court dismissed with leave to amend Plaintiffs' § 1983 claims because the Court found that Plaintiffs had not sufficiently alleged that Liccardo and Garcia had acted with malicious intent or targeted Plaintiffs because of their political affiliations. *Id.* at 7–13. The Court also found that Plaintiffs had not alleged a municipal policy sufficient to render the City of San Jose vicariously liable for the actions of Liccardo, Garcia, or the police officers. *Id.* at 13–18. The Court further found that Plaintiffs' Bane Act and Ralph Act claims were based on essentially the same allegations as Plaintiffs' § 1983 claim, and therefore the Court dismissed with leave to amend the Bane Act and Ralph Acts claims. *Id.* at 18–21. However, the Court found that Plaintiffs had sufficiently alleged a negligence claim against the Doe police officers and the City. *Id.* at 21–25.

**B. First Amended Complaint**

On November 14, 2016, Plaintiffs filed an amended complaint ("FAC"). ECF No. 35. The Plaintiffs in the FAC are Juan Hernandez, Nathan Velasquez, Frank Velasquez, Rachel Casey, Mark Doering, Mary Doering, Barbara Arigoni, Dustin Haines-Scrodin, Andrew Zambetti, Christina Wong, Craig Parsons, the minor I.P., Greg Hyver, Todd Broome, Martin Mercado, Christopher Holland, Theodore Jones, Donovan Rost, Michele Wilson, and Cole Cassady. ECF No. 35, at 1. The FAC sues the City of San Jose; San Jose Police Chief Edgardo Garcia; San Jose police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, Jason Ta; and Does 1–15 as City Defendants ("FAC City Defendants"). *Id.* The FAC also sues the minor H.A., the minor S.M., Anthony Yi, Victor Gasca, Daniel Arciga, Rafael Medina, Anthony McBride, and Does 16–55 as individual private citizen Defendants who had no connection to the FAC City Defendants. *Id.*

The FAC alleges the following facts.

Plaintiffs are individuals who attended a rally for then presidential candidate Donald J. Trump ("Trump") on June 2, 2016 at the McEnery Convention Center ("Convention Center") in San Jose, California. FAC ¶¶ 62–63. At the end of the rally, as Plaintiffs were leaving the

building, San Jose police and other police officers directed Plaintiffs from the east-northeast exit of the Convention Center. *Id.* ¶ 89. A police line outside the exit "directed the Trump supporters to turn north and to proceed along Market Street, into [a] crowd of violent anti-Trump protesters." *Id.* ¶ 90. "The police also actively prevented the Trump Rally attendees from proceeding south along Market Street, away from the anti-Trump protesters, or from leaving the convention center through alternative exits." *Id.* ¶ 91. When Plaintiffs reached the anti-Trump protesters, the protesters attacked. *Id.* ¶ 92.

According to the FAC, Garcia, Kinsworthy, and other unspecified actors devised the crowd-control plan for the Trump Rally and were deliberately indifferent to whether the plan caused harm to Plaintiffs. *Id.* ¶¶ 75, 87. Plaintiffs also claim that the police officers on duty on the night of the Trump Rally acted with "deliberate indifference, reckless and/or conscious disregard of a known and obvious danger, by directing Plaintiffs into the mob, preventing Plaintiffs from leaving the event through other, safer paths, and by failing to intervene in the many attacks perpetrated on Plaintiffs and the Class members, which would not have occurred but for the police officers' actions." *Id.* ¶ 287. Specifically, Plaintiffs allege that violence had been reported as early as 6:00 p.m. on the night of the Trump Rally, and yet police officers Kinsworthy, Gannon, Abruzzini, Messier, Spagnoli, Fong, Ta, and Does 1–15 (collectively, "individual police officers") continued to direct Plaintiffs out of the same single exit of the convention center even after realizing that doing so placed Plaintiffs in serious danger. *Id.* ¶ 1. Plaintiffs also claim that the City itself is vicariously liable for the actions of its police officers on the night of the Trump Rally. *Id.* ¶¶ 292–96, 303–10. Plaintiffs claim that the City is liable in part because after the rally Garcia allegedly praised officers for their "discipline and restraint" because "additional force can incite more violence in the crowd." *Id.* ¶ 102.

The FAC contains 43 claims by 20 individual plaintiffs against 17 named defendants and 55 Doe defendants. ECF No. 35. 39 of the 43 claims in the FAC are made by 17 individual Plaintiffs against 46 individual private citizen Defendants who have no connection to the FAC City Defendants. The FAC describes 11 separate incidents in which individual Plaintiffs or groups

of Plaintiffs allege that individual private citizen Defendants or groups of these Defendants attacked them. The facts of each of these incidents are described in detail in Section III.A.2.a.

The remaining four causes of action in the FAC are alleged against the FAC City Defendants. These claims are: (1) a claim under 42 U.S.C. § 1983 against Garcia and the individual police officers for violation of Plaintiffs' rights under the Fourteenth Amendment (Count 1); (2) a claim against the City under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987) for violation of Plaintiffs' rights under the Fourteenth Amendment the City (Count 2); a claim for violation of the Bane Act, CAL. CIV. CODE § 52.1, against Garcia, the City, and the individual police officers (Count 3); and (4) a California common law negligence claim against the City (Count 4). FAC ¶¶ 280–310.

**C. Second Motion to Dismiss**

The FAC City Defendants filed a motion to dismiss the FAC's four claims asserted against the FAC City Defendants on December 22, 2016. ECF No. 44. The Court granted in part and denied in part this motion on March 14, 2017. ECF No. 72. Specifically, the Court found that Plaintiffs had not stated a claim under 42 U.S.C. § 1983 based on any of the FAC City Defendants' actions before the Trump Rally in devising the crowd-control plan. *Id.* at 35. The Court therefore dismissed this claim with prejudice. Because this was the only claim asserted against Garcia, the Court dismissed Garcia from the case with prejudice. *Id.* However, the Court found that Plaintiffs had stated a claim under 42 U.S.C. § 1983 based on the actions of individual police officers on the night of the Trump Rally after the officers allegedly noticed that their actions were placing Plaintiffs in danger. *Id.* The Court denied the FAC City Defendants' motion to dismiss the § 1983 claims against the individual police officers on the basis of qualified immunity because the Court found that the law clearly established that police officers could not direct Plaintiffs into a dangerous situation with deliberate indifference to Plaintiffs' safety. *Id.* The Court also denied the motion to dismiss the *Monell* claim against the City because the Court found that the FAC adequately alleged that the City had ratified the individual police officers' actions. *Id.* The Court granted the FAC City Defendants' motion to dismiss with prejudice the FAC's Bane

Act claim. *Id.* The Court denied the FAC City Defendants' motion to dismiss the FAC's negligence claims. *Id.*

Thus, after the second motion to dismiss, the City Defendants who remain in the case are individual police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, Jason Ta, and Does 1–15, as well as the City of San Jose ("City Defendants").

**D. Notice of Appeal**

On March 28, 2017, the City Defendants filed a notice of appeal to the Ninth Circuit. ECF No. 80. In the appeal, the City Defendants sought interlocutory review of the Court's decision denying the motion to dismiss the FAC's 42 U.S.C. § 1983 claim against individual police officers on the basis of qualified immunity. *Id.* Specifically, the City Defendants appealed the Court's finding that the individual police officers – Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta – were not entitled to qualified immunity for their actions on the night of the Trump Rally after they allegedly noticed that their actions were placing Plaintiffs in danger because the law clearly established that police officers could not direct Plaintiffs into a dangerous situation with deliberate indifference to Plaintiffs' safety. *Id.* Under *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), and other relevant case law, a Defendant may appeal a denial of qualified immunity even though final judgment has not been issued.

The City Defendants did not appeal the Court's denial of the motion to dismiss the *Monell* claim against the City or the negligence claim against the City, because no case law allows for the interlocutory appeal of denials of a motion to dismiss a *Monell* or negligence claim. *Id.* However, on March 30, 2017, the City Defendants filed a document before the Ninth Circuit stating that "Appellants will be requesting that the Ninth Circuit exercise pendent jurisdiction over Plaintiffs' [*Monell* and negligence] claims against the City as they are inextricably intertwined." Case No. 17-15576, Dkt. Entry 2, at 2.

**E. Motion for Stay**

Case No. 16-CV-03957-LHK
ORDER SEVERING CLAIMS, DISMISSING ACTIONS WITHOUT PREJUDICE, AND STAYING ACTION

United States District Court
Northern District of California

On March 29, 2017, the City Defendants filed the instant motion to stay the entire action pending resolution of the City Defendants' appeal of the Court's decision denying the motion to dismiss the FAC's § 1983 claim against individual police officers on the basis of qualified immunity. ECF No. 82. Plaintiffs filed an opposition to the motion to stay on April 12, 2017. ECF No. 89. The City Defendants filed a response on April 19, 2017. ECF No. 91.

### F. Motion to Sever Misjoined Parties

On March 30, 2017, the City Defendants filed the instant motion to sever misjoined parties. ECF No. 84. Plaintiffs filed an opposition to the motion on April 10, 2017. ECF No. 88. The City Defendants filed a reply on April 19, 2017. ECF No. 91.

## II.    LEGAL STANDARD

### A. Severance of Claims

Under Federal Rule of Civil Procedure ("Rule") 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." A district court has "broad discretion . . . to make a decision granting severance." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000). Although a court should not "attempt to separate an essentially unitary problem," a court may sever claims that are "discrete and separate." *Anticancer, Inc. v. Pfizer Inc.*, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012). In deciding whether to sever a claim under Rule 21, a court considers the following factors:

"(1) whether the claims arise out of the same transaction or occurrence;

(2) whether the claims present some common questions of law or fact;

(3) whether settlement of the claims or judicial economy would be facilitated;

(4) whether prejudice would be avoided if severance were granted; and

(5) whether different witnesses and documentary proof are required for the separate

claims."

*SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999)). If the Court severs a claim, the severed claim "must have an independent jurisdictional basis" for subject matter jurisdiction and

"can no longer rely on the supplemental jurisdiction afforded by 28 U.S.C. § 1367(a), for there is nothing left to supplement." *Herklotz v. Parkinson*, 848 F.3d 894, 898 (9th Cir. 2017).

### B. Motion to Stay

The filing of an interlocutory appeal of a Court's denial of qualified immunity automatically divests the Court of jurisdiction to proceed with trial on the issues involved in the appeal. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that denials of qualified immunity can be appealable).

"District courts have inherent authority to stay proceedings before them." *Rohan ex. rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003), *abrogated on other grounds by Ryan v. Gonzales*, 568 U.S. 57 (2013). The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). This power also comes from "the power of every court to manage the cases on its docket and to ensure a fair and efficient adjudication of the matter at hand." *Rivers v. Walt Disney World*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citing *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983)). The decision whether to stay a civil action is left to the sound discretion of the district court. *Rohan*, 334 F.3d at 817.

In deciding whether to stay a pending proceeding, a court should weigh all relevant "competing interests." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

## III. DISCUSSION

### A. Severance of Misjoined Parties

#### 1. The City Defendants' Motion

8

In the City Defendants' October 6, 2016 initial case management statement, the City Defendants stated that they "may file a Rule 21 motion to sever the claims asserted against City Defendants from the claims asserted against the Individual Defendants on the grounds that the issues of fact and law governing the respective claims are divergent and distinct." ECF No. 17, at 4. The City Defendants repeated this same statement verbatim in their January 11, 2017 case management statement, their March 2, 2017 case management statement, and their March 15, 2017 case management statement. ECF No. 59, at 4; ECF No. 70, at 4; ECF No. 74, at 4. The parties discussed the motion for misjoinder at each of the case management conferences. At each of these case management conferences, the Court stated that it was inclined to sever the claims against individual private citizen Defendants from the claims against the City Defendants, and the City Defendants agreed that the anticipated motion would seek this relief. In the Court's March 16, 2017 case management order, the Court set a briefing schedule for the motion for misjoinder. ECF No. 77.

However, the City Defendants' motion to sever misjoined parties does not seek the relief that the City Defendants consistently informed the Court that the City Defendants would seek. The City Defendants' motion to sever misjoined parties does not seek to sever Plaintiffs' claims against the City Defendants from Plaintiffs' claims against individual private citizen Defendants. Instead, City Defendants' motion to sever misjoined parties seeks to sever Plaintiffs' claims into an unspecified number of "instances where one or more plaintiff[s] encountered the same defendant or defendants whom that plaintiff or group of plaintiffs contend caused his or her injury." ECF No. 84, at 7. In other words, the City Defendants' motion seeks to divide the instant case into an unspecified number of cases, each of which contains claims by one or a small group of Plaintiffs against *both* the particular City Defendants who allegedly violated their rights *and* the individual private citizen Defendants who allegedly assaulted those Plaintiffs.

However, as Plaintiffs point out in their opposition to the motion to sever, the Court no longer has jurisdiction to grant the severance that the City Defendants seek. When a party files a non-frivolous appeal of a district court's order, the notice of appeal "divests the district court of its

control over those aspects of the case involved in the appeal." *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2010). On March 28, 2017, the City Defendants appealed the Court's decision denying the City Defendants' motion to dismiss the FAC's § 1983 claim against the individual police officers on the basis of qualified immunity. *Id.* Specifically, the City Defendants appealed the Court's denial of the motion to dismiss the § 1983 claim against San Jose police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta based on the Court's finding that these individual police officers were not entitled to qualified immunity because the law clearly established that police officers could not direct Plaintiffs into a dangerous situation with deliberate indifference to Plaintiffs' safety. *Id.* The City Defendants did not appeal the Court's denial of the motion to dismiss the *Monell* and negligence claims against the City.

Both Plaintiffs and the City Defendants agree that the Court has no jurisdiction over the § 1983 claims against the individual police officers. Plaintiffs state that "[o]nce th[e] notice [of appeal] was filed, this Court was immediately divested of jurisdiction over Plaintiffs' § 1983 claims against the individual police officers." ECF No. 88, at 4-5. The City Defendants claim more broadly that the appeal "'automatically' divests the Court of jurisdiction over proceedings against City Defendants" including the § 1983 claims against individual police officers as well as the *Monell* and negligence claims. ECF No. 82, at 3; *see also* ECF No. 90 ("Consistent with City Defendants' Motion to Stay, City Defendants do not take a position on whether this Court has jurisdiction to decide the instant motion [for severance].").

In short, although the parties disagree about whether the Court has jurisdiction over the *Monell* and negligence claims, both parties agree that the Court has no jurisdiction over the § 1983 claim against the individual police officers. As discussed above, the City Defendants' motion seeks to divide the instant case into an unspecified number of cases, each of which contains claims by one or a small group of Plaintiffs against both the particular City Defendants who allegedly violated their rights and the individual private citizen Defendants who allegedly assaulted those Plaintiffs. Thus, the City Defendants' motion seeks to divide Plaintiffs' § 1983 claim against the

United States District Court
Northern District of California

individual police officers into several separate § 1983 claims against particular police officers. ECF No. 84, at 5 ("[N]o single set of facts can or will establish liability under Title 42 U.S.C. § 1983 for all of the plaintiffs.") However, the Court has no jurisdiction over the § 1983 claim against the individual police officers, and therefore the Court has no jurisdiction to divide that claim into several separate claims.

Therefore, because the Court, during the pendency of the City Defendants' appeal, lacks jurisdiction to order the relief that the City Defendants seek, the Court DENIES without prejudice the City Defendants' motion to sever misjoined parties.

## 2. Severance on the Court's Own Motion

Although the Court denies the City Defendants' motion to sever misjoined parties, the Court nevertheless has inherent authority to sever claims on its own motion. *See* Rule 21 ("On motion or on its own . . . ."); *see also, e.g.*, *Khanna v. State Bar of Cal.*, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007) ("Although neither party has moved for severance in the instant case, the Court may sever claims sua sponte.").

Under Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The Court therefore considers, on its own motion, whether to sever the claims against individual private citizen Defendants (most of which are assault, battery, and Ralph Act claims) both from each other and from the claims against the City Defendants. To determine whether to sever these claims, the Court will consider the following factors:

"(1) whether the claims arise out of the same transaction or occurrence;

(2) whether the claims present some common questions of law or fact;

(3) whether settlement of the claims or judicial economy would be facilitated;

(4) whether prejudice would be avoided if severance were granted; and

(5) whether different witnesses and documentary proof are required for the separate claims."

*SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (quoting *Morris v. Northrop*

United States District Court
Northern District of California

*Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999)). The Court considers these factors in turn.

### a. Same Transaction or Occurrence

The Court first considers whether the claims arise out of the same occurrence or transaction. Deciding this question requires evaluating whether there is "similarity in the factual background of [the] claim[s]." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). After two rounds of motions to dismiss, Plaintiffs' claims against the City Defendants relate only to the actions of individual police officers on the night of the Trump Rally after the police officers allegedly realized that their crowd-control plan was placing Plaintiffs in danger. In contrast, Plaintiffs' 39 causes of action against individual private citizen Defendants relate to 11 "discrete and separate" alleged violent incidents against individual Plaintiffs or groups of Plaintiffs. *Anticancer, Inc. v. Pfizer Inc.*, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012).

The 11 separate incidents are as follows. First, Plaintiffs Juan Hernandez and Dustin Haines-Scrodin allege that they attended the Trump Rally and were directed by police to walk through a crowd of anti-Trump protesters. *Id.* ¶ 119. After encountering the protesters, Hernandez and Haines-Scrodin were struck repeatedly in their faces and heads by Defendant Victor Gasca. *Id.* ¶ 120. Several other anti-Trump protestors also battered Hernandez and Haines-Scrodin. *Id.* ¶ 121. Defendant Gasca has been indicted for the battery against Haines-Scrodin. *Id.* ¶ 126. Based on these allegations, Plaintiffs Hernandez and Haines-Scrodin assert a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Defendant Gasca, which are claims #5–#7 in the FAC.

Second, Plaintiff Andrew Zambetti attended the Trump Rally and exited the east-northeast exit of the convention center. *Id.* ¶ 172. After leaving the Trump Rally, Zambetti was struck in the back of the head by an unknown individual with a bag filled with hard objects, which Zambetti believes were rocks. *Id.* ¶ 173. Zambetti suffered a concussion because of this attack. *Id.* ¶ 174. Based on these allegations, Plaintiff Zambetti asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Doe 16, which are claims #8–#10 in the FAC.

12

Third, Plaintiff I.P. attended the Trump Rally and exited the east-northeast exit of the convention center. *Id.* ¶ 161. After exiting, I.P was struck in the back of the head twice by Defendant H.A. *Id.* ¶ 162. I.P. then allegedly ran toward a San Jose Fire Department vehicle and asked for help, but no Fire Department employees offered assistance. *Id.* ¶ 164–65. I.P. was then tackled to the ground by Defendant S.M. *Id.* ¶ 166. Both H.A. and S.M. have been indicted for and pled guilty to misdemeanor criminal charges for attacking I.P. *Id.* ¶ 171. Based on these allegations, Plaintiff I.P. asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Defendants H.A. and S.M., which are claims #11–#13 in the FAC.

Fourth, Plaintiffs Frank and Nathan Velasquez attended the Trump Rally and were directed by police toward the crowd of anti-Trump protesters. *Id.* ¶ 127–29. Soon afterward, Defendant Anthony Yi, an anti-Trump protester, took Nathan Velasquez's hat. *Id.* Yi ran away but soon slipped and fell. *Id*. Nathan Velasquez then tried to pick up the hat that Yi had stolen and tried to help Yi to his feet. *Id.* ¶ 130. However, upon standing up, Yi struck Nathan Velasquez in the head, which caused a concussion. *Id.* ¶ 132. Frank and Nathan Velasquez moved back toward the police line and were allowed to stand near the police line because they were pursued by Yi and five or six other protesters. *Id.* ¶ 136–37. Yi has since pleaded *nolo contendere* to criminal charges for the theft and battery against Nathan Velasquez. *Id.* ¶ 139. Plaintiffs Frank and Nathan Velasquez assert a claim for assault and a claim for violation of the Ralph Act against Defendant Yi, which are claims #14 and #16 in the FAC. Plaintiff Nathan Velasquez asserts a claim for battery, a claim for intentional infliction of emotional distress, and a claim for negligent infliction of emotional distress against Defendant Yi, which are claims #15, #17, and #18 in the FAC.

Fifth, Plaintiff Rachel Casey left the Trump Rally approximately an hour after arriving, and was directed into a "waiting, violent mob." *Id.* ¶ 140. This mob of protesters followed Casey and eventually pinned Casey against the doors of the nearby Marriott Hotel. *Id.* ¶ 145. The protesters threw objects at Casey, "including approximately seven eggs, a tomato, and a bottle of water" until eventually Marriott Hotel guards let Casey in the building. *Id.* ¶ 146. Plaintiffs allege that Defendants Anthony McBride, Victor Gasca, and Rafael Arciga had roles in this attack on

Plaintiff Casey. Specifically, Plaintiffs allege that Defendant McBride admitted that he stood by "clapping and chanting with the other protesters as objects were being thrown at Casey." *Id.* ¶ 148. McBride also allegedly told officers that McBride "was smart enough not to touch [Plaintiff Casey] in front of the cameras." *Id.* ¶ 149. Plaintiffs also allege that McBride made statements on Twitter detailing his dislike for "the type of white people" such as Plaintiff Casey. *Id.* ¶ 150. Plaintiffs allege that Defendant McBride also confessed to being involved in other attacks. *Id.* ¶ 151. Plaintiffs allege that Defendant Arciga spat on Casey at the base of her neck. *Id.* ¶ 152. Defendant Gasca also allegedly admitted he was standing in front of Plaintiff Casey and deprived her of her personal liberty. *Id.* ¶ 154. According to police records, Defendants McBride, Arciga, and Gasca deprived Plaintiff Casey of her personal liberty. *Id.* ¶ 154. McBride was later indicted for falsely imprisoning Plaintiff Casey and other unrelated crimes. *Id.* ¶ 157. Gasca was also indicted for falsely imprisoning Plaintiff Casey. *Id.* ¶ 158. Finally, Arciga was indicted for battery against Plaintiff Casey. *Id.* ¶ 159. Based on these allegations, Plaintiff Casey asserts a claim for assault, a claim for battery, a claim for false imprisonment, and a claim for violation of the Ralph Act against Defendants Arciga, McBride, Gasca, and Does 17–35, which are claims #19–#22 in the FAC.

Sixth, Plaintiffs Mark Doering, Mary Doering, Barbara Arigoni, and Michele Wilson attended the Trump Rally and arrived by the municipal light rail. *Id.* ¶ 176–77. After exiting the rally, police officers directed Plaintiffs Mark Doering, Mary Doering, Arigoni, and Wilson to return to the light rail. *Id.* ¶ 181. Upon reaching the light rail, Plaintiffs found that it was inoperable because protesters and a police line blocked the tracks. *Id.* ¶183. Therefore, Plaintiffs walked down West San Carlos Street to find a bus. *Id.* ¶ 185. Soon thereafter, a group of three females with their faces covered by bandanas attacked Arigoni, "pulled her by the hair, removed her glasses from her head and broke them, causing her to fear for her safety and suffer bodily harm." *Id.* ¶ 189. After police failed to intervene, Mark Doering confronted the attackers, who attempted to bite Mark Doering, punch him in the shoulders, knock off his glasses, and rip his shirt. *Id.* ¶ 194. Because of this attack, Mary Doering, Arigoni, and Wilson feared for their safety.

Case No. 16-CV-03957-LHK
ORDER SEVERING CLAIMS, DISMISSING ACTIONS WITHOUT PREJUDICE, AND STAYING ACTION

*Id.* ¶ 194. Wilson allegedly approached several police officers and asked for help, but no police officers offered assistance. *Id.* ¶¶ 195–198. After the attacks, a police officer approached Plaintiffs and stated, "I'm so sorry," but the police officer also stated that the police could not do anything. *Id.* ¶ 198–199. Based on these allegations, Plaintiffs Arigoni and Wilson assert a claim for assault and a claim for violation of the Ralph Act against Does 36–38, which are claims #23 and #25 in the FAC. Plaintiff Arigoni asserts a claim for battery against Does 36–38, which is claim #24 in the FAC. Plaintiffs Mark Doering and Mary Doering assert a claim for assault and a claim for violation of the Ralph Act against Defendants Does 36–38, which are claims #26 and #28 in the FAC. Plaintiff Mark Doering asserts a claim for battery against Does 36–38, which is claim #27 in the FAC.

Seventh, Plaintiff Martin Mercado attended the Trump Rally and tried to leave in the direction of his car. *Id.* ¶¶ 225–26. Police officers required Mercado to exit in a different direction, and as Mercado walked, one anti-Trump protester spat on Mercado, and another attempted to steal Mercado's Trump sign and in the process injured Mercado's shoulder. *Id.* ¶ 230. After reaching the parking garage, police officers did not allow Mercado to get inside his vehicle. *Id.* ¶ 231. Based on these allegations, Plaintiff Mercado asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Defendants 39–40, which are claims #29–#31 in the FAC.

Eighth, Plaintiff Christopher Holland attended the Trump Rally and after leaving the Trump Rally, Holland was forced by police officers to take a detour to his car. *Id.* ¶ 232–34. Upon reaching the parking garage where his car was parked, Holland was confronted by an anti-Trump protester who prevented Holland from continuing to his car. *Id.* ¶ 237. Shortly thereafter, an anti-Trump protester punched Holland in the face. *Id.* ¶ 237. A nearby police officer did not assist Holland. *Id.* ¶ 239. Based on these allegations, Plaintiff Holland asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Doe 41, which are claims #32–#34 in the FAC.

Ninth, Plaintiff Theodore Jones attended the Trump Rally and after leaving the Trump

Rally, Jones was directed towards the anti-Trump protesters. *Id.* ¶ 240–41. Defendant Gasca threatened Jones verbally and made threatening gestures. *Id.* ¶ 244. Defendant Arciga then punched Jones in the jaw. *Id.* ¶ 246. Defendant Medina then allegedly kicked Jones in the head. *Id.* ¶ 247. Defendant Medina was later indicted for assault with a deadly weapon. *Id.* ¶ 250. Defendant Arciga was later indicted for battery against Jones. *Id.* ¶ 251. Based on these allegations, Plaintiff Jones asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Defendant Gasca, which are claims #35–#37 in the FAC.

Tenth, Plaintiff Donovan Rost attended the Trump Rally and after leaving the Trump Rally, Rost was directed toward the light rail station. *Id.* ¶ 254. Approximately 50–100 anti-Trump protesters ran towards Rost. *Id.* ¶ 255. One of the protesters attempted to punch Rost, but Rost pushed him away. *Id.* ¶ 256. The mob chased Rost into a parking structure, to a second light rail station, and then to yet another light rail station. *Id.* ¶ 258–61. Based on these allegations, Plaintiff Rost asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Does 42–43, which are claims #38–#40 in the FAC.

Eleventh, Plaintiff Cole Cassady attended the Trump Rally and was one of the first to leave. *Id.* ¶ 262.  As he left the Trump Rally, Cassady was directed toward a crowd of anti-Trump protesters. *Id.* ¶ 264. As Cassady walked, one anti-Trump protester stole Cassady's hat, another protester kicked Cassady in the back, and other protesters threw water bottles at Cassady and spat on him. *Id.* ¶ 266. Cassady requested help from a police officer, but the officer said he would not intervene and then pulled out his baton in a threatening manner. *Id.* ¶ 272. Based on these allegations, Plaintiff Cassady asserts a claim for assault, a claim for battery, and a claim for violation of the Ralph Act against Does 44–55, which are claims #41–4#3 in the FAC.

These 11 separate incidents do not arise out of the same "transaction or occurrence." *Leslie*, 2010 WL 2991038, at *4. Each of these incidents involved different Plaintiffs (20 in total) and different Defendants (17 in total), with the exception that Defendant Gasca and Defendant Arciga were both allegedly involved in the incident involving Plaintiff Casey and the incident involving Plaintiff Jones. Although these incidents occurred on the same evening in downtown

United States District Court
Northern District of California

San Jose, the circumstances of each incident, as alleged in the FAC, are very different. *Heritage Pac. Fin., LLC v. Cole*, 2010 WL 1838106, at *2 (C.D. Cal. May 3, 2010) (severing claims that occurred at "roughly at the same time") (citing *DirecTV v. Loussaert*, 218 F.R.D. 639, 641-44 (S.D. Iowa 2003)) (severing claims that "rest[ed] upon distinct and independent sets of facts")).

The instant case is somewhat similar to the Ninth Circuit's decision in *Coughlin*. In *Coughlin*, the Ninth Circuit upheld an order severing the claims of 49 different Plaintiffs, each of whom alleged that their immigration-related applications were substantially delayed. 130 F.3d at 1349. The Court noted that there were differences in the length of the delay, the reasons for the delay, and whether the defendants disputed the delay. *Id.* Therefore, the Ninth Circuit found that the claims were not part of the same transaction or occurrence. *Id.*

Thus, as the factual descriptions above make clear, Plaintiffs have alleged 11 discrete and separate incidents of alleged violence, which involve different Plaintiffs, different Defendants, different actions, different harms, different law enforcement responses, different locations, and different times.

Additionally, the 11 separate incidents are all different from the claims against the City Defendants. The City Defendants consist of individual police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta; unnamed police officers Does 1–15; and the City of San Jose as employer of the individual police officers. However, in the FAC, Plaintiffs do not allege that these particular police officers had any role in or witnessed any of the 11 separate incidents. For these reasons, the claims against the City Defendants arise out of a different transaction or occurrence than the claims involved in the 11 separate incidents.

Thus, the claims in the FAC do not arise out of the same "transaction or occurrence." *Coughlin*, 130 F.3d at 1350. This factor therefore favors severance.

**b. Common Questions of Law or Fact**

Next, the Court considers whether the claims involve common questions of law or fact. As discussed in detail above, there is little factual overlap in each of the alleged incidents. Plaintiffs

17

have alleged 11 discrete and separate incidents of alleged violence, which involve different Plaintiffs, different Defendants, different actions, different harms, different law enforcement responses, different locations, and different times. Also, as discussed above, Plaintiffs do not allege that any of the individual police officers whose behavior underlies the claims against the City was involved in or witnessed any of the 11 alleged incidents. Therefore, there are likely to be few common questions of fact between the claims against the individual police officers and the claims against the individual private citizen Defendants.

Furthermore, the questions of law between the different claims are very different. There are no causes of action that Plaintiffs assert both against the City Defendants and any individual private citizen Defendants. Against the City Defendants, Plaintiffs assert federal constitutional claims and a state law negligence claim. Against the individual private citizen Defendants, Plaintiffs assert only state law claims, most of which are common law tort claims and none of which are negligence claims. "These types of claims, which were originally based on common law, are the type of claims over which state courts presumably have great expertise." *Driscoll v. Superior Court*, 223 Cal. App. 4th 630, 641 (2014).

Additionally, Defendants Gasca, H.A., S.M, Yi, McBride, and Arciga were indicted for their actions on the night of the Trump Rally, and the state court is presiding over criminal charges against those Defendants. FAC ¶¶ 126, 157, 158, 159, 171, 250, 251. Thus, the state court has familiarity with the facts and is better equipped to apply state tort laws. The state court may also be aware of Plaintiffs' damages from these incidents based on restitution requests in the criminal cases. Therefore, the state court is better situated to evaluate the facts of each of the 11 incidents and to apply state law.

For these reasons, there are few common questions of law and fact between the claims against individual private citizen Defendants and claims against the City Defendants. Thus, the second factor favors severance.

### c. Settlement of Claims and Judicial Economy

The principles of judicial economy strongly support severance. The FAC contains 43

claims by 20 individual plaintiffs against 17 named defendants and 55 Doe defendants. ECF No. 35. A consolidated trial of all of these causes of action would be impossible. Indeed, in the March 15, 2017 case management statement, the parties stated that they "agree to consider the possibility of conducting the trial in phases, including by trying the Class claims (concerning alleged violations of civil rights) separately from the Individual Plaintiffs' claims (concerning personal injuries and other damages)." ECF No. 74, at 8.

However, if the Court held one trial for the claims against the City Defendants and one trial for each of the 11 alleged incidents giving rise to the claims against individual private citizen Defendants, the Court would be forced to hold 12 consecutive trials in the instant case. This would substantially delay resolution of many claims, would reduce the incentives for prompt settlement, and would present a severe burden for the Court and the parties. Thus, the third factor strongly favors severing the claims.

### d. Avoidance of Prejudice

Severing the claims would not prejudice any party. Indeed, as discussed above, severing the claims would avoid the lengthy delays that would be necessary due to consecutive trials. Additionally, Plaintiffs will not be prejudiced by the "loss of otherwise timely claims if new suits are blocked by statutes of limitations." *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015). Plaintiffs' claims all arose at the earliest on June 2, 2016, the day of the Trump Rally. FAC ¶ 273. The shortest limitations period for Plaintiffs' causes of action against individual private citizen Defendants is one year, which applies to the tort of false imprisonment. Cal. Code of Civ. Proc. § 340(c). Thus, if the Court severs and dismisses any of Plaintiffs' state law claims, Plaintiffs will still have nearly three weeks to refile in state court. Additionally, even if Plaintiffs did face an obstacle because of the statute of limitations, Plaintiffs may be able to take advantage of California's equitable tolling rules, which allow tolling of the statute of limitations "where a first action, embarked upon in good faith, is found to be defective for some reason." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 100 (2008). Therefore, Plaintiffs would not be prejudiced by severance.

19

The City Defendants also would not be prejudiced by severance. In their motion for severance of misjoined claims, the City Defendants raise the possibility that individual Plaintiffs might "get two separate opportunities" to recover for the same injury if the individual Plaintiffs sue the City Defendants and the individual private citizen Defendants in different actions. ECF No. 84, at 7. However, as discussed above, the claims against the City Defendants and the claims against the individual private citizen Defendants allege different violations under different causes of action, and the City Defendants provide no support for the argument that Plaintiffs could not recover for both alleged violations. Nevertheless, if recovery in an individual action has an influence on Plaintiffs' recovery against the City Defendants based on the doctrine of issue preclusion or some other legal doctrine, the City Defendants can ensure that their rights are protected by an appropriate motion when the issue is ripe for decision. Therefore, the City Defendants would not be prejudiced by severance.

Thus, because no party would be prejudiced by severance, the fourth factor weighs in favor of severing the claims.

### e. Different Witnesses and Documentary Proof

Proof of each of the 11 alleged incidents will rely on almost entirely different witnesses and documentary proof. Only Defendant Gasca and Defendant Arciga were allegedly involved in two incidents. Otherwise, there are no individuals who Plaintiffs allege participated in or witnessed more than one of the 11 incidents. Additionally, as discussed above, Plaintiffs do not allege that any of the individual police officers whose behavior underlies the claims against the City Defendants was involved in or witnessed any of the 11 alleged incidents.

Thus, the vast majority of witnesses and other evidence will be unique to each of the 11 alleged incidents. Additionally, even if there were common witnesses, the party's suggestion of holding multiple consecutive trials would mean that these witnesses would have to testify at multiple trials in any event. Therefore, the fifth factor also favors severing the claims.

### f. Severance and Jurisdiction

Each of the five factors supports severing the claims. Therefore, the Court severs the

20

claims so that the claims against the City Defendants are in one action and the claims relating to each of the 11 alleged incidents are in 11 separate actions. Specifically, the Court severs the claims alleged in the FAC into the following 12 actions:

| Action | Plaintiff(s) | Defendant(s) | Causes of Action |
|---|---|---|---|
| 1 | All Plaintiffs | Kinsworthy, Gannon, Abruzzini, Messier, Spagnoli, Fong, and Ta | Claim 1: Violation of 42 U.S.C. § 1983 |
| | | City of San Jose | Claim 2: Violation of 42 U.S.C. § 1983 based on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987) <br> Claim 4: Negligence |
| 2 | Hernandez and Haines-Scrodin | Gasca | Claim 5: Assault <br> Claim 6: Battery <br> Claim 7: Violation of the Ralph Act |
| 3 | Zambetti | Doe 16 | Claim 8: Assault <br> Claim 9: Battery <br> Claim 10: Violation of the Ralph Act |
| 4 | I.P. | H.A. and S.M. | Claim 11: Assault <br> Claim 12: Battery <br> Claim 13: Violation of the Ralph Act |
| 5 | Frank Velasquez | Yi | Claim 14: Assault <br> Claim 16: Violation of the Ralph Act |
| | Nathan Velasquez | Yi | Claim 14: Assault <br> Claim 15: Battery <br> Claim 16: Violation of the Ralph Act <br> Claim 17: Intentional infliction of emotional distress <br> Claim 18: Negligent infliction of emotional distress |

United States District Court
Northern District of California

| 6 | Casey | McBride, Gasca, Arciga, and Does 17–35 | Claim 19: Assault<br>Claim 20: Battery<br>Claim 21: False imprisonment<br>Claim 22: Violation of the Ralph Act |
|---|---|---|---|
| 7 | Arigoni, Wilson, Mark Doering, and Mary Doering | Does 36–38 | Claim 23: Assault<br>Claim 24: Battery<br>Claim 25: Violation of the Ralph Act |
| | | | Claim 23: Assault<br>Claim 25: Violation of the Ralph Act |
| | | | Claim 26: Assault<br>Claim 27: Battery<br>Claim 28: Violation of the Ralph Act |
| 8 | Mercado | Does 39–40 | Claim 29: Assault<br>Claim 30: Battery<br>Claim 31: Violation of the Ralph Act |
| 9 | Holland | Doe 41 | Claim 32: Assault<br>Claim 33: Battery<br>Claim 34: Violation of the Ralph Act |
| 10 | Jones | Gasca | Claim 35: Assault<br>Claim 37: Violation of the Ralph Act |
| | | Arciga and Medina | Claim 36: Battery<br>Claim 37: Violation of the Ralph Act |
| 11 | Rost | Does 42–43 | Claim 38: Assault<br>Claim 39: Battery<br>Claim 40: Violation of the Ralph Act |
| 12 | Cassady | Does 44–55 | Claim 41: Assault<br>Claim 42: Battery<br>Claim 43: Violation of the Ralph Act |

With the claims divided into 12 separate actions, the Court must now consider whether it has jurisdiction over all of these actions. The Ninth Circuit has held that "[a] severed action must have an independent jurisdictional basis. It can no longer rely on the supplemental jurisdiction afforded by 28 U.S.C. § 1367(a), for there is nothing left to supplement." *Herklotz*, 848 F.3d at 898.

Therefore, to determine whether the Court has jurisdiction over each of the 12 actions, the Court must consider whether each separate action has an independent jurisdictional basis.

As shown in the table above, Action #1, which is against the City Defendants, contains two federal statutory causes of action. Therefore, the Court has federal question jurisdiction over Action #1 under 28 U.S.C. § 1331.

As shown in the table above, Actions #2–#12 have no federal causes of action, but instead contain only state causes of action, none of which "necessarily raise[s] a stated federal issue" that would justify federal question jurisdiction. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Therefore, the Court does not have federal question jurisdiction over Actions #2–#12 under 28 U.S.C. § 1331.

Additionally, the FAC alleges that every named Plaintiff and every named Defendant is a resident of California, and the FAC makes no allegations regarding the residency of the Doe Defendants. FAC ¶¶ 18–60. Thus, there is no diversity of citizenship. Therefore, the Court does not have jurisdiction over Actions #2–#12 under 28 U.S.C. § 1332.

In short, the Court has jurisdiction over Action #1 but lacks jurisdiction over Actions #2–#12. Because the Court lacks jurisdiction over Actions #2–#12, the Court also lacks jurisdiction over the parties that are named only in Actions #2–#12, namely Defendants H.A., S.M., Anthony Yi, Victor Gasca, Daniel Arciga, Rafael Medina, Anthony McBride, and Does 16–55. However, the Court has jurisdiction over each of the Plaintiffs because all Plaintiffs join in Action #1 against the City Defendants, over which the Court has jurisdiction.

"An accepted practice under Rule 21 is to dismiss the parties that have been improperly joined, . . . [and] [d]ropping a defendant for improper joinder operates as a dismissal without prejudice." *Heritage Pac. Fin., LLC v. Cole*, 2010 WL 1838106, at *3 (C.D. Cal. May 3, 2010). Such a dismissal is "without prejudice to the institution of new, separate lawsuits . . . ." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Thus, pursuant to Rule 21, the Court hereby SEVERS Actions #2–#12 and DISMISSES Actions #2–#12 without prejudice for refiling in state court.

Case No. 16-CV-03957-LHK
ORDER SEVERING CLAIMS, DISMISSING ACTIONS WITHOUT PREJUDICE, AND STAYING ACTION

## B. Motion to Stay

The Court next addresses the City Defendants' motion for a stay. The City Defendants' motion seeks a stay of the entire case, including the claims against individual private citizen Defendants based on the burdens of discovery related to these claims. However, after severance, the Court has no jurisdiction over Actions #2–#12, no jurisdiction over the individual private citizen Defendants, and no jurisdiction to stay Actions #2–#12 proceedings. Those actions have been dismissed without prejudice for refiling in state court. The City Defendants must seek stay relief in state court when Plaintiffs refile those actions. This Court has jurisdiction to stay only Action #1, which contains Plaintiffs' three remaining claims against the City Defendants: (1) the § 1983 claim against the individual police officers, (2) the *Monell* claim against the City; and (3) the negligence claim against all the City.

As discussed above, on March 28, 2017, the City Defendants appealed the Court's denial of the motion to dismiss the § 1983 claim against the individual police officers on the basis of qualified immunity. ECF No. 80. Specifically, the City Defendants appealed the Court's denial of the motion to dismiss the § 1983 claim against individual police officers Loyd Kinsworthy, Lisa Gannon, Kevin Abruzzini, Paul Messier, Paul Spagnoli, Johnson Fong, and Jason Ta based on the Court's finding that the individual police officers were not entitled to qualified immunity because the law clearly established that police officers could not direct Plaintiffs into a dangerous situation with deliberate indifference to Plaintiffs' safety. *Id.*

The filing of an interlocutory appeal of a Court's qualified immunity determination automatically divests the Court of jurisdiction to proceed with trial on the issues involved in the appeal. *City of Los Angeles, Harbor Div.*, 254 F.3d at 886; *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal.").

The City Defendants argue that because of the appeal of the § 1983 claim against the individual police officers, the Court should also stay Plaintiffs' *Monell* and negligence claims against the City. Plaintiffs argue that the *Monell* claim and negligence claim are not "aspects of the

case involved in the appeal," and therefore the Court has jurisdiction over those claims. *Id.* at 58. However, even if the Court has jurisdiction over the *Monell* and negligence claims, a stay pending appeal is nevertheless warranted. *See May v. Sheahan*, 226 F.3d 876, 880 n.2 (7th Cir. 2000) ("The district court has authority to proceed forward with portions of the case not related to the claims on appeal, such as claims against other defendants or claims against the public official that cannot be (or simply are not) appealed. Still, a district court might find it best to stay an entire case pending the resolution of a [interlocutory qualified immunity] appeal.").

In determining whether a stay is warranted, the Court considers whether a stay is in the interest of "economy of time and effort for itself, for counsel, and for litigants," *Landis*, 299 U.S. at 254, and whether a stay would "ensure a fair and efficient adjudication of the matter at hand." *Rivers*, 980 F. Supp. at 1360. The Court also considers all relevant "competing interests," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110. The Court finds that a stay is warranted in the instant case for several reasons.

First, the Ninth Circuit may take pendent jurisdiction over Plaintiffs' *Monell* and negligence claims. On March 30, 2017, the City Defendants filed a document before the Ninth Circuit stating that "Appellants will be requesting that the Ninth Circuit exercise pendent jurisdiction over Plaintiffs' [*Monell* and negligence] claims against the City as they are inextricably intertwined." Case No. 17-15576, Dkt. Entry 2, at 2. Courts of Appeals regularly take pendent jurisdiction over claims that are "inextricably intertwined" with the issues involved in an appeal of a qualified immunity decision. *See, e.g.*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 960 (9th Cir. 2004) (taking pendent jurisdiction over substantive constitutional claim in appeal of qualified immunity decision). If the Ninth Circuit grants the City Defendants' request to take pendent jurisdiction over the *Monell* and negligence claims, the Court will be automatically divested of jurisdiction over those causes of action. *See City of Los Angeles, Harbor Div.*, 254

25

F.3d at 886 (holding that an appeal "divests the district court of jurisdiction over the particular issues involved in that appeal"). Thus, if the Ninth Circuit takes pendent jurisdiction of the *Monell* and negligence claims, then all litigation of those matters in this Court may be rendered moot.

Additionally, a stay of all claims against the City Defendants would substantially "simplify[] . . . issues, proof, and questions of law." *Lockyer*, 398 F.3d at 1110. In the instant case, the *Monell* claim against the City is based entirely on the allegation that the City ratified the § 1983 violations of the individual police officers. Thus, if the Court were to proceed to summary judgment and trial on the *Monell* claim, the Court and the jury would be forced to decide the individual officers' liability under § 1983 in order to decide the *Monell* claim against the City. This would put the Court on summary judgment and the jury at trial in the position of deciding the individual police officers' liability under § 1983 while that same question is pending on appeal.

Similarly, the negligence claim against the City is based entirely on the fact that the City is the employer of the individual police officers and is therefore liable for the individual police officers' actions – the same actions that form the basis of the appealed § 1983 claim. Thus, if the Court did not stay the negligence claim, the parties would be forced to take discovery on and litigate the individual police officers' conduct, and eventually the Court and the jury would have to evaluate that conduct, even though that same conduct is the subject of the City Defendants' appeal. In short, the appealed § 1983 claim arises from the same facts as the unappealed *Monell* and negligence claims. Thus, the unappealed claims are "inextricably intertwined" with the appealed claim. *Kwai Fun Wong v. United States*, 373 F.3d at 960. Unless the Court stays litigation on all three claims, the parties may engage in extensive discovery, motions practice, and trial that may be rendered moot by the Ninth Circuit's ruling on appeal.

The Seventh Circuit's decision in *Monfils v. Taylor*, 165 F.3d 511, 519 (7th Cir. 1998), is instructive in this regard. In *Monfils*, the plaintiffs asserted a claim under 42 U.S.C. § 1983 both against an individual police officer and against the City of Green Bay under *Monell* for allegedly ratifying the police officer's conduct. The district court held that the police officer was not entitled to qualified immunity, and the police officer appealed that ruling. *Id.* at 518. While the appeal was

United States District Court
Northern District of California

pending, the district court did not proceed to trial on the claim against the police officer because the appeal deprived the court of jurisdiction over that claim, but the court proceeded to trial on the separate *Monell* claim against the City of Green Bay for allegedly ratifying the police officer's conduct. The police officer "was the only person whose conduct was used to attempt to establish a [*Monell*] violation against the City." *Id.* at 519. Therefore, as part of its verdict on the claim against the City of Green Bay, the jury had to make a decision about whether the police officer had violated the plaintiff's constitutional rights under § 1983. Ultimately, the jury found that the individual defendant had violated the plaintiff's constitutional rights under § 1983. On appeal, the Seventh Circuit had to decide the issue of qualified immunity for the individual defendant, which would determine whether the individual defendant would go to trial. As a result, the Seventh Circuit was placed in the "unique situation . . . of having to determine whether the individual claim against [the individual defendant] must be tried—which would really be a second trial of the issue." *Id.* Although the *Monfils* Court did not hold that the district court had acted improperly, the Seventh Circuit later cited this case as an example of why "a district court might find it best to stay an entire case pending the resolution of a [qualified immunity] appeal." *See May*, 226 F.3d at 880 n.2.

As in *Monfils* and as discussed above, if the Court did not grant a stay in the instant case, the Court would be forced to litigate the same issues that are currently pending on appeal, which raises a risk that all litigation in this case may be rendered moot by the Ninth Circuit's resolution of the appeal. Thus, a stay in the instant case would substantially "simplify[] . . . issues, proof, and questions of law" by avoiding duplicative litigation. *Lockyer*, 398 F.3d at 1110.

Finally, a stay in the instant case would not prejudice Plaintiffs' claims against the individual private citizen Defendants. As discussed above, because the Court has severed and dismissed Actions #2–12 without prejudice for refiling in state court, there will be no stay of Actions #2–12, which involve the 11 separate incidents of alleged violence. Because these actions will proceed to trial without a stay, there is no risk that critical evidence will be lost or forgotten.

In short, a stay of the claims against the City Defendants is in the interest of "economy of

27

time and effort for [the Court], for counsel, and for litigants," *Landis*, 299 U.S. at 254, and also would "ensure a fair and efficient adjudication of the matter at hand, " *Rivers*, 980 F. Supp. at 1360. For these reasons, the Court exercises its discretion and hereby STAYS all claims in Action #1, which is the only action remaining in the case, until resolution of the City Defendants' appeal.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice the City Defendants' Motion for Severance of Misjoined Claims.

The Court SEVERS the claims alleged in the FAC into 12 separate actions as follows:

- Action #1 (City Defendants): Claims 1–4 (except Claim 3, which the Court dismissed in its March 16, 2017 order)

- Action #2 (Hernandez and Haines-Scrodin Incident): Claims 5–7

- Action #3 (Zambetti Incident): Claims 8–10

- Action #4 (I.P. Incident): Claims 11–13

- Action #5 (Frank and Nathan Velasquez Incident): Claims 14–18

- Action #6 (Casey Incident): Claims 19–22

- Action #7 (Mark Doering, Mary Doering, Arigoni, and Wilson Incident): Claims 23–28

- Action #8 (Mercado Incident): Claims 29–31

- Action #9 (Holland Incident): Claims 32–34

- Action #10 (Jones Incident): Claims 35–37

- Action #11 (Rost Incident): Claims 38–40

- Action #12 (Cassady Incident): Claims 41–43

The Court finds that it lacks jurisdiction over Actions #2–#12 and therefore DISMISSES those Actions without prejudice for refiling in state court.

The Court also STAYS Action #1 against the City Defendants until resolution of the City Defendants' appeal.

**IT IS SO ORDERED.**

Dated: May 15, 2017

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No. 16-CV-03957-LHK
ORDER SEVERING CLAIMS, DISMISSING ACTIONS WITHOUT PREJUDICE, AND STAYING ACTION